[No. 50510-1. En Banc. December 6, 1984.]

THE CITY OF BELLEVUE, *Respondent*, v. MAURICE C. ACREY, *Petitioner*.

THE CITY OF BELLEVUE, *Respondent*, v. CYNTHIA LYNN BANDLE, *Petitioner*.

*Rigby & Jones,* by *Bradley B. Jones,* for petitioners.

*Susan R. Irwin, City Attorney,* and *Scott C. McKee, Assistant,* for respondent.

PEARSON, J.—This case requires us to decide whether a

criminal defendant effectively waives his rights to trial by jury and to counsel where, being fully aware of those rights, he proceeds through trial without an attorney and without a request for a jury. We hold that such inaction by a defendant, without an express waiver on the record, does not rise to the level of a knowing and intelligent waiver of these important constitutional rights.

These two consolidated cases arose from the same set of facts. Petitioners Acrey and Bandle were involved in a car accident in November 1981 when their car collided with a second vehicle. Petitioners gave false information to the investigating officer at the scene of the accident. As a result, they were subsequently cited for the misdemeanor of obstructing a public officer under Bellevue City Code 10.16.030. That ordinance provides:

> It is unlawful for any person to make any wilfully untrue, misleading or exaggerated statement, or to wilfully hinder, delay or obstruct any public officer in the discharge of his official powers or duties.

Both petitioners appeared for arraignment on January 12, 1982, in Bellevue District Court, without counsel. The judge read the "Statement of Rights of Accused Persons" form to all defendants in the room. That form itemizes nine specific rights that defendants have; included are the rights to jury trial and to counsel. The form states that a public defender will be appointed at no cost if defendant cannot afford a lawyer. The phone number and address of the public defender is prominently displayed on the form. Nowhere on the form is there a statement of waiver of any right.

The arraignment judge called the petitioners individually to the bench. The following colloquies occurred:

COURT: Maurice Acrey. (pause) Mr. Acrey, do you feel you understand your rights in this court?

ACREY: Yes.

COURT: Any questions you'd like to ask me about?

ACREY: No.

COURT: You're charged with two offenses; first is Obstructing a Police Officer. Do you feel you

understand the nature of that charge?

ACREY: I don't know the nature of the charge, of the specifics, I know what the charge means.

COURT: O.K. Are you prepared to enter a plea at this point?

ACREY: Yes, not guilty.

COURT: Ms. Bandle, do you feel you understand your rights in this Court?

BANDLE: Yes.

COURT: Any questions you'd like to ask me about those rights?

BANDLE: No.

COURT: You're charged with Obstructing a Public Officer also on the 21st of November, 1981. Do you feel you understand what the nature of the charge is?

BANDLE: Yes.

COURT: Are you prepared to enter a plea to that charge?

BANDLE: Yes, not guilty.

COURT: Do you have any questions about any of that?

BANDLE: No.

No further pertinent discussion occurred between the judge and petitioners. Petitioners signed the "Rights Form" and received a copy; however, neither petitioner signed a waiver of any right.

The petitioners appeared for trial in Bellevue District Court, again without counsel, on April 8, 1982. The trial judge called petitioners to the defense table, asked if there was any reason the two cases could not be tried together, and instructed the prosecution to call its first witness. The judge did not comment on the absence of counsel for petitioners, nor did he inform petitioners of the possible penalties for obstructing a public officer. Likewise, the judge did not question petitioners regarding their desire for a jury trial, nor their lack of request for a jury.

A bench trial resulted in the convictions of both petitioners and each petitioner was sentenced to the maximum 90 days in jail, with all but 10 days suspended.

Petitioners, having secured counsel prior to sentencing, appealed those convictions to the Superior Court; the con-

victions were affirmed.

Petitioners raised the issues of jury and counsel waiver for the first time at the Court of Appeals. That court affirmed the convictions, holding that such waiver could be implied from petitioners' actions: "Standing trial without counsel or a jury under the circumstances of this case is an affirmative act . . . which we treat as the equivalent of a verbal expression of waiver." *Bellevue v. Acrey,* 37 Wn. App. 57, 66, 678 P.2d 1289 (1984).

## I
### WAIVER OF JURY TRIAL

■ The holding of the Court of Appeals, that a waiver of jury may be imputed to a defendant based on his actions, is not supported by law. In Washington, every criminal defendant has a constitutional right to a jury trial, even when charged with a misdemeanor. *Pasco v. Mace,* 98 Wn.2d 87, 653 P.2d 618 (1982). A waiver of that right must be voluntary, knowing, and intelligent. *State v. Forza,* 70 Wn.2d 69, 422 P.2d 475 (1966). Additionally, a court must indulge every reasonable presumption against waiver of fundamental rights. *Glasser v. United States,* 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457 (1942).

This court has expressed its opinion regarding jury waiver in several recent cases; these cases control the decision in the present case. In each case, we have refused to infer a waiver when the record shows less than an affirmative, unequivocal waiver by defendant. Accordingly, we do not find a valid waiver in the present case. Although petitioners were fully aware of the right to a jury, the record fails to show an express waiver of that right by petitioners.

In *State v. Wicke,* 91 Wn.2d 638, 591 P.2d 452 (1979), this court refused to find that the defendant had effectively waived a jury trial. There, the defendant appeared in court with his attorney; the attorney orally waived a jury trial. The defendant did not sign a written waiver, nor did the trial judge ask him whether he concurred in counsel's waiver. This court held that a waiver of jury must be

expressly made, by defendant, on the record.

Implied waivers were again found to be inadequate by this court in *Seattle v. Crumrine,* 98 Wn.2d 62, 653 P.2d 605 (1982). The defendant in *Crumrine* had an attorney and waived arraignment; he did not request a jury trial and was convicted by the trial judge. Crumrine argued on appeal that his conviction must be reversed because no affirmative waiver of jury trial appeared on the record. This court agreed, stating, "the only indication that the petitioner waived his right to a jury trial was his failure to demand one. That is not sufficient to meet constitutional requirements." *Crumrine,* at 65.

The present case is indistinguishable from *Wicke* and *Crumrine.* In fact, the present case presents less evidence of knowing and intelligent jury waiver than those precedents; significantly, petitioners here did not have the benefit of counsel as did Wicke and Crumrine.

Finally, this court's most recent case on jury waiver again indicates our strong resistance to implied waiver of jury trial. In *Seattle v. Williams,* 101 Wn.2d 445, 680 P.2d 1051 (1984), this court stated that any conditional waiver of jury undertaken at arraignment must be written. Where a defendant is demonstrably aware of the constitutional right to a jury and has expressly waived that right in writing, the waiver will be effective. The written waiver requirement of *Williams* thus eliminates implied waiver of jury.

However, the *Williams* written waiver rule cannot resolve the present case, as the events in this case arose before *Williams* was decided. We therefore hold that in a pre–*Williams* case an express waiver, *either* oral or written, and made by the defendant, must appear on the record to establish a valid jury waiver. This holding applies only to the present case and to other pre–*Williams* cases that are currently in the process of appeal.

## II
### WAIVER OF COUNSEL

A waiver of counsel must be knowing, voluntary, and

intelligent, as with any waiver of constitutional rights. *Argersinger v. Hamlin,* 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006 (1972). If counsel is properly waived, a criminal defendant has a right to self–representation. Const. art. 1, § 22 (amend. 10); U.S. Const. amend. 6; *Faretta v. California,* 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975).

In *Faretta,* the Court articulated the test for valid waiver of counsel:

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self–representation, *he should be made aware of the dangers and disadvantages of self–representation,* so that the record will establish that "he knows what he is doing and his choice is made with eyes open." *Adams* v. *United States ex rel. McCann,* 317 U. S. [269, 279, 87 L. Ed. 268, 63 S. Ct. 236, 143 A.L.R. 435 (1942)].

(Italics ours.) *Faretta,* at 835.

██ The Court of Appeals dismissed the *Faretta* test as dicta. *Bellevue v. Acrey,* 37 Wn. App. at 67. That interpretation of *Faretta* cannot stand. The waiver test articulated by the *Faretta* Court was necessary to its ultimate holding that Faretta made a valid waiver of counsel. The Court examined the record and applied the test, finding that the trial judge had adequately warned Faretta of the "dangers and disadvantages" of self–representation. *Faretta,* 422 U.S. at 808 n.2, 835.

The federal circuit courts interpret *Faretta* in two ways. A number of the circuits require a colloquy on the record between the judge and defendant whereby the judge informs the defendant of the risks of self–representation. The colloquy must show that the trial judge advised defendant in unequivocal terms of the technical problems he may encounter in self–representation, *United States v. Welty,* 674 F.2d 185 (3d Cir. 1982), or that the judge has, in some fashion, explained and explored the risks of self–representation with the defendant. *United States v. Donahue,* 560 F.2d 1039 (1st Cir. 1977); *United States v. Aponte,* 591 F.2d 1247 (9th Cir. 1978); *United States ex rel. Tonaldi v.*

*Elrod,* 716 F.2d 431 (7th Cir. 1983); *United States v. Bailey,* 675 F.2d 1292 (D.C. Cir. 1982).

Division Three of the Court of Appeals has also interpreted *Faretta* to require a colloquy on the record. That court held in *State v. Chavis,* 31 Wn. App. 784, 644 P.2d 1202 (1982) that a valid waiver requires a thorough inquiry into the defendant's understanding of self–representation. The *Chavis* court specifically rejected as inadequate the form of waiver undertaken by Chavis:

> *[A] mere routine inquiry*—the asking of several standard questions followed by the signing of a standard written waiver of counsel—may leave a judge entirely unaware of the facts essential to an informed decision that an accused has executed a valid waiver . . .

*Chavis,* at 789–90 (citing *Von Moltke v. Gillies,* 332 U.S. 708, 92 L. Ed. 309, 68 S. Ct. 316 (1948)). *Accord, State v. Dougherty,* 33 Wn. App. 466, 655 P.2d 1187 (1982), *review denied,* 99 Wn.2d 1023 (1983).

Conversely, other federal circuit courts decline to require a colloquy on the record to prove that defendant was aware of the risks of self–representation. These courts find a valid waiver if there is evidence on the record that the defendant actually understood the risks, even though the judge did not address the question. *United States v. Kimmel,* 672 F.2d 720 (9th Cir. 1982); *Hodge v. United States,* 414 F.2d 1040 (9th Cir. 1969); *United States v. Gillings,* 568 F.2d 1307 (9th Cir. 1978).

In our judgment, the trial court should assume responsibility for assuring that decisions regarding self–representation are made with at least minimal knowledge of what the task entails. The United States Supreme Court recognized this 36 years ago in *Von Moltke v. Gillies, supra* at 723–24, where the Court stated:

> [A] judge must investigate as long and as thoroughly as the circumstances . . . demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility.

██ In interpreting *Faretta,* we agree that a colloquy on the record is the preferred means of assuring that defendants understand the risks of self–representation. We strongly recommend such a colloquy as the most efficient means of limiting appeals. That colloquy, at a minimum, should consist of informing the defendant of the nature and classification of the charge, the maximum penalty upon conviction and that technical rules exist which will bind defendant in the presentation of his case.

Nonetheless, in cases where no colloquy exists on the record, this court will look at any evidence on the record that shows defendant's actual awareness of the risks of self–representation. However, in no case will mere evidence of a defendant's literacy, educational level, common sense, or prior experience with the criminal justice system be sufficient to show an awareness of these risks.

A defendant's background is certainly relevant to his ability to make a sensible, intelligent decision regarding self–representation. That background, however, is not relevant to show whether a sensible, literate, and intelligent defendant possesses the necessary information to make a meaningful decision as to waiver of counsel. The fact that a defendant is well educated, can read, or has been on trial previously is not dispositive as to whether he understood the relative advantages and disadvantages of self–representation in a particular situation.

In the absence of a colloquy, the record must somehow otherwise show that the defendant understood the seriousness of the charges and knew the possible maximum penalty. The record should also show that the defendant was aware of the existence of technical rules and that presenting a defense is not just a matter of telling one's story. *See Maynard v. Meachum,* 545 F.2d 273 (1st Cir. 1976). Accordingly, only rarely will adequate information exist on the record, in the absence of a colloquy, to show the required awareness of the risks of self–representation.

The record in the present case fails to satisfy the *Faretta* standard as interpreted by this court. No colloquy appears

between the judge and petitioners wherein the judge addressed the risks of self–representation. The record otherwise holds no evidence that shows that petitioners actually knew the nature or seriousness of the charge, the possible penalties, or that presenting a defense is a technical matter, subject to technical rules. Petitioners did not expressly waive counsel; even if they had, this record is inadequate to show that they understood or were aware of the "dangers and disadvantages of self–representation".

The convictions are therefore reversed and the cause remanded for a new trial. The standards enunciated today for valid waiver of counsel are applicable to cases arising from the date of the filing of this opinion, to those pending on appeal where the issue was raised, and to the present case.

WILLIAMS, C.J., UTTER, BRACHTENBACH, and DORE, JJ., and JAMES, J. Pro Tem., concur.

DOLLIVER, J. (dissenting)—The issue in this case is not whether the constitutional rights to a trial by jury and counsel can be waived by a silent record. They cannot. *Seattle v. Crumrine,* 98 Wn.2d 62, 653 P.2d 605 (1982). The issue is whether there is a silent record. There is not. The majority cites *State v. Wicke,* 91 Wn.2d 638, 591 P.2d 452 (1979) and *Seattle v. Crumrine, supra,* as being indistinguishable. They are not. The other recent case cited as controlling is *Seattle v. Williams,* 101 Wn.2d 445, 680 P.2d 1051 (1984). It is distinguishable. Furthermore the *"Faretta"* test (*Faretta v. California,* 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975)) cited by the majority is dicta and has no relevance to this case.

The "Statement of Rights of Accused Persons" form which was read to defendants at the time of arraignment and was signed by them stated:

As a result of being accused of a criminal or traffic offense, and pleading Not Guilty, you are entitled to the following protective rights:

. . .

2. A trial before a judge, or, in selected cases, before a jury.

. . .

6. The right to be represented by a lawyer of your own choosing and at your own expense at any stage of the proceedings. If you cannot afford a lawyer, a public defender can be appointed, without charge to you, to assist in your defense.

. . .

NOTE CONCERNING PUBLIC DEFENDER: If you believe that you qualify to be represented by the Public Defender due to your being unemployed or without money to hire and pay for your own lawyer, you should immediately contact:

OFFICE OF PUBLIC DEFENSE
1914 Smith Tower
Seattle, Washington 98104
Phone: 344-3462

NOTE CONCERNING RIGHT TO AND REQUEST FOR JURY TRIAL: You have a right to a jury trial if charged with any offense by the State of Washington, or by a city or municipality with a Gross Misdemeanor or other offense which will result, upon a judgment of guilty, in the suspension or revocation of your driver's license or privilege to drive. A jury trial must be timely requested in writing prior to your trial date.

There was not a statement of rights of accused persons which was read to defendants and then signed by them in either *Wicke* or *Crumrine*. In *Williams* the record did not show whether defendants had their rights read to them or whether they had been advised in writing of their constitutional rights to a jury and to counsel. Neither of those conditions was in any doubt here. The rights were read to the defendants. They were given the statement of rights which they both signed.

In *Faretta* the defendant was forced to accept, against his will, a state appointed public defender. The Supreme Court held this deprived him of his constitutional right to conduct his own defense. The material quoted by the court from *Faretta* is to reinforce the position of defendant that

he had known what he was doing and the choice was "made with eyes open". *Faretta*, at 835.

What does the record show here? (1) In open court the judge read defendants their statement of rights, which included right to a jury and right to counsel. (2) The court asked the defendants, separately and on the record, if they understood their rights. (3) On the record each defendant answered yes. (4) The judge asked the defendants, separately and on the record, if they had any questions about their rights. (5) Both defendants, on the record, answered no. (6) Both defendants signed the statement of rights. (7) The statement of rights is written in clear, explicit, and easily comprehended language. (8) No claim is made defendants are illiterate, could not speak or understand the English language, or were otherwise somehow unable to comprehend the statement of rights. This is hardly a silent record.

Defendants were advised of their rights. They were informed as to what had to be done to secure their rights. By any reasonable standard, they knew about, ignored and in fact waived their rights. Now, having lost their case on the merits at every court level, they call upon the appellate courts to hold they had not made a knowing and intelligent waiver of their rights. The record contradicts this assertion; the constitution should not be mocked. I dissent.

DIMMICK, J., concurs with DOLLIVER, J.