IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31244-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID WAYNE HALLS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. — David W. Halls appeals his second degree assault — domestic violence conviction. He contends his conviction lacks sufficient supporting evidence because the State failed to prove he intentionally meant to harm his girl friend. He further contends the trial court erred in accepting his jury waiver, allowing him to represent himself at trial, and in failing to conduct a competency hearing. Finally, Mr. Halls contends he received ineffective assistance of counsel. We reject Mr. Halls' contested contentions and find no merit in his pro se statement of additional grounds for review (SAG). But considering RCW 9.94A.701, we accept the State's error concession regarding the trial court's error in sentencing Mr. Halls to a variable term of community custody. *See State v. Franklin*, 172 Wn.2d 831, 836, 263 P.3d 585 (2011) ("a court may no longer sentence an offender to a variable term of community custody [that is] contingent on the amount of earned release but instead, it must determine the precise

No. 31244-5-III
*State v. Halls*

length of community custody at the time of sentencing."). Accordingly, we affirm Mr. Halls' conviction and remand for the limited purpose of correcting his judgment and sentence to remove the offending community custody condition.

## FACTS

According to the State's evidence, during an argument between Mr. Halls and his live-in girl friend, Rhonnda Harshman, Mr. Halls grabbed Ms. Harshman by the throat and pushed her onto the bed. He then picked up a glass candleholder and threw it at Ms. Harshman, hitting her on the head and causing a laceration. Ms. Harshman was transported to the hospital where she received stitches to close the wound.

The State charged Mr. Halls with second degree assault — domestic violence. At his arraignment, the court informed him of the charge against him and his standard range sentence of 63 to 84 months based on his criminal history. The State later amended the information to include "COUNT II – ASSAULT IN THE THIRD DEGREE." Clerk's Papers (CP) at 6. This charge included a domestic violence allegation.

Mr. Halls' trial counsel withdrew five days before trial and the court appointed new counsel, who requested a continuance. Mr. Halls declined to waive his speedy trial rights and requested self-representation during the following colloquy:

> THE COURT: Do you know what you're doing when you represent yourself?
> MR. HALLS: Partially.
> THE COURT: Well, do you think you need the assistance of counsel to do with correctly?
> MR. HALLS: Um, on my point, no, I don't think so. I'd like to switch from jury trial to have a bench trial and be

2

ready for Monday, and I wish to take that upon myself and do it.

THE COURT: You want to do it a nonjury trial?

MR. HALLS: Yes. I would like to have bench trial on Monday.

THE COURT: Now I have two things to address formally on the record. Let me – are you able – how far did you go in school?

MR. HALLS: Probably about the 9th grade.

THE COURT: Are you able to read and write?

MR. HALLS: Yes.

THE COURT: Do you understand the maximum sentence that you're exposed to is ten years in prison and a $20,000 fine on this charge?

MR. HALLS: OK, yes.

THE COURT: Do you understand the Court will not assist you? You'll be expected to handle all your own legal affairs without assistance from the Court?

MR. HALLS: Yes.

THE COURT: During the trial?

MR. HALLS: Yes.

THE COURT: Do you think you're capable of doing that?

MR. HALLS: Yes.

THE COURT: And have you been in court before? Have you gone to trial before? Have you been through the process?

MR. HALLS: I have been to trial once[.]

Report of Proceedings (RP) (Apr. 4, 1012) at 8. The court then stressed that based on

Mr. Halls' multiple prior felonies, the State may ask for an exceptional sentence upward

of 120 months. Mr. Halls responded that he understood and still did not want counsel.

The court later asked, "Have you ever had a stay at Eastern State Hospital or

any other mental health facility?" RP (Apr. 4, 2012) at 14. Mr. Halls responded,

"Eastern and Western and both competent." *Id.* Mr. Halls then stated he had never

been put in a mental health institution after a competency evaluation. The court then

3

found Mr. Halls was "competent to make this decision and represent himself and waive

his right to trial -- or to counsel at trial." RP (Apr. 4, 2012) at 15. The court stated, "He's

had the opportunity to speak with counsel, and he's making that choice I believe freely

and voluntarily and knowingly. And so I'll consider his right to counsel waived." *Id.*

Regarding the jury waiver, the following colloquy occurred on the record:

> THE COURT: . . . Now a jury trial, do you know the difference between a jury and a nonjury trial?
> MR. HALLS: Um, my say on it would be I'd have 12 in the box and one outside of it, 13, and then for a bench trial it would just be the prosecutor, me, and a judge.
> THE COURT: Well, you seem to notice the difference. Had you talked over that strategy with your attorney before making the decision?
> MR. HALLS: No. I've made that by myself and set that up.
> THE COURT: And do you think you know what you're doing? You have a reason for that? I don't want to necessarily know what that is, but do you have a reason for making that decision?
> MR. HALLS: I just don't want to waste no more court's time on this.
> THE COURT: Do you realize you'll have a jury trial on the 9th, the same day you would have judge trial?
> MR. HALLS: That's fine. I realize that.
> THE COURT: And you still want to go jury or nonjury?
> MR. HALLS: Nonjury.
> THE COURT: I'll find that he's waived his right to a jury trial freely and voluntarily and knowingly. Appears to understand what it is, and he's been in the court system a lot, and I'm sure he does understand.

RP (Apr. 4, 2012) at 15-16. Mr. Halls then signed a waiver to his right to a jury trial.

During the bench trial, a witness at the house on the night in question testified

Ms. Harshman and Mr. Halls were arguing and that Mr. Halls grabbed Ms. Harshman by

4

the throat and threw her on the bed. The witness testified Mr. Halls picked up "nunchucks" in an attempt to scare her. RP (Apr. 9, 2012) at 49. Mr. Halls next picked up a candleholder and threw it at Ms. Harshman's head.

Ms. Harshman testified Mr. Halls picked up a candleholder and threw it at her head, causing a large cut that required medical attention. A picture of Ms. Harshman's wound was admitted into evidence. The court noted a scar was visible on her forehead. Mr. Hall denied throwing the candleholder in his defense.

The court found Mr. Halls "picked up a glass candle holder . . . and threw it at Ms. Harshman." CP at 41. The court then found Mr. Halls guilty of second degree assault — domestic violence. The court stated, "Sir, the State charged you with Assault in the Second Degree, or basically in [the] alternative, Assault in the Third Degree for the same acts. I found that the State met its burden on the Assault in the Second Degree, so you're guilty of that. And Count II will be dismissed because you only get found guilty of one count." RP (Apr. 9, 2012) at 82.

Mr. Halls accepted counsel for sentencing. Counsel asked for a competency evaluation. The court granted the motion and stayed proceedings, ordering Eastern State Hospital (ESH) to conduct a forensic mental health evaluation of Mr. Halls' competency. ESH found Mr. Halls did not have a mental disease or defect and had the capacity to understand the proceedings against him and assist counsel. The court entered a competency order without holding an evidentiary hearing.

5

The court sentenced Mr. Halls to 63 months (the low-end of a standard range sentence) and ordered community placement "for the longer of: (1) the period of early release. RCW 9.94A.728(1)(2); or (2) the period imposed by the court [18 months]." CP at 49. Mr. Halls appealed.

## ANALYSIS

### A. Evidence Sufficiency

The issue is whether sufficient evidence supports Mr. Halls' conviction for second degree assault – domestic violence. He contends the State's evidence was insufficient to prove he intentionally assaulted Ms. Harshman. "In a criminal prosecution, due process requires the State to prove every element of the charged crime beyond a reasonable doubt." *State v. Smith*, 155 Wn.2d 496, 502, 120 P.3d 559 (2005).

Evidence is sufficient if, when viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.* Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Because it is the fact finder's responsibility to resolve credibility issues and determine the weight of the evidence, we defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

6

To prove second degree assault — domestic violence, the State had to prove Mr. Halls "intentionally" assaulted Ms. Harshman and thereby recklessly inflicted substantial bodily injury. RCW 9A.36.021(1)(a); RCW 10.99.020(5). Intent may be inferred from the defendant's conduct. *Delmarter*, 94 Wn.2d at 638. Intent evidence includes the manner and act of inflicting the wound, the nature of the prior relationship, and any previous threats. *State v. Mitchell*, 65 Wn.2d 373, 374, 397 P.2d 417 (1964).

The record shows Ms. Harshman and Mr. Halls were arguing. Mr. Halls grabbed her by the throat and then threw her on the bed. He then picked up "nunchucks" to scare her. RP (Apr. 9, 2012) at 49. Still angry, Mr. Halls grabbed a candleholder and threw it at Ms. Harshman, causing substantial bodily injury. Pictures and Ms. Harshman's physical appearance support the live testimony. While Mr. Halls disputes this evidence, credibility determinations are for the trier of fact. *Camarillo*, 115 Wn.2d at 71. Therefore, viewing the evidence in the light most favorable to the State, sufficient evidence supports Mr. Halls' second degree assault — domestic violence conviction.

## B. Waivers

The issue is whether the trial court erred in accepting Mr. Halls' waivers to his right to a jury trial and his right to the assistance of counsel at trial.

First, Mr. Halls contends the trial court erred by accepting his jury waiver without proof he had knowingly, intelligently, and voluntarily waived his jury trial right. The federal and state constitutions guarantee the right to a jury trial. U.S. CONST. amend VI; CONST. art. I, § 21. The right may be waived, but it must be done so voluntarily,

7

knowingly, and intelligently. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 207, 691 P.2d 957 (1984). The State has the burden to demonstrate that the waiver is valid. *State v. Wicke*, 91 Wn.2d 638, 645, 591 P.2d 452 (1979). We review the validity of a jury trial waiver de novo. *State v. Ramirez-Dominguez*, 140 Wn. App. 233, 239, 165 P.3d 391 (2007). A defendant's waiver of his or her jury trial right must be made knowingly, intelligently, voluntarily, and without improper influences. *State v. Stegall*, 124 Wn.2d 719, 724-25, 881 P.2d 979 (1994). A written jury trial waiver "is strong evidence that the defendant validly waived the jury trial right." *State v. Pierce*, 134 Wn. App. 763, 771, 142 P.3d 610 (2006). Additionally, we consider whether the trial court informed the defendant of his or her jury trial right. *Id.*

Mr. Halls signed a written waiver of his right to a jury trial attesting he was notified of his right and chose to waive it. Additionally, the record shows the trial judge discussed the difference between a jury and nonjury trial with Mr. Halls and notified him of his right to a jury trial. Mr. Halls stated that he understood and wanted to waive his right. Under *Pierce*, this is strong evidence of a valid waiver, and we so conclude.

Second, Mr. Halls contends the trial court erred by accepting his assistance of counsel waiver without proof he knowingly, intelligently, and voluntarily waived his right. Specifically, Mr. Halls argues he was not adequately informed of the charges against him to make a proper waiver of his right to counsel. Like the right to a jury trial, the right to counsel is guaranteed under both the state and federal constitutions. U.S. CONST. amends. VI & XIV; WASH. CONST. art. I, § 22. A criminal defendant, however, has the

8

right to proceed without counsel when he or she voluntarily and intelligently elects to do so. *Faretta v. California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). We review a request for a waiver of the constitutional right to counsel for abuse of discretion.[1] *State v. Madsen*, 168 Wn.2d 496, 504, 229 P.3d 714 (2010). Discretion is abused if it is exercised without tenable grounds or reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

In order to exercise the right to self-representation, a defendant's request must be unequivocal, knowing, voluntary, intelligent, and timely. *Acrey*, 103 Wn.2d at 208-09. Courts should indulge every reasonable presumption against finding that a defendant has waived the right to counsel. *State v. Chavis*, 31 Wn. App. 784, 789, 644 P.2d 1202 (1982). Our Supreme Court "strongly recommend[s]" a colloquy between the trial court and defendant as the best means of assuring that the defendant understands the risks of self-representation. *Acrey*, 103 Wn.2d at 211. Such a waiver must be prefaced on the trial court "informing the defendant of the nature and classification of the charge, the maximum penalty upon conviction, and that technical rules exist which

---

[1] Federal and other state courts apply a de novo standard of review to a criminal defendant's waiver of his Sixth Amendment right to assistance of counsel. *United States v. McBride*, 362 F.3d 360, 365-66 (6th Cir. 2004) (discussing the trend in the Sixth Circuit for having two different standards of review for the counsel waiver issue and noting that the 9th, 10th, and 11th Circuits all apply a de novo standard of review); *State v. Watson*, 900 A.2d 702, 712-13 (Me. 2006) (while noting that North Dakota, Michigan, Iowa, and Colorado apply a de novo standard of review, the court concluded that Maine courts should apply a bifurcated standard of review for counsel waiver, reviewing any express or implicit factual findings for clear error, and the legal conclusions de novo).

will bind defendant in the presentation of his case." *Id.*

Mr. Halls argues the trial court abused its discretion when it granted his request to waive counsel because he was not adequately informed of the charges against him. Initially, Mr. Halls discusses a potential witness tampering charge. This charge, however, was never included in the information nor is it part of the judgment and sentence that is currently on appeal. Thus, his argument is unhelpful in analyzing his waiver argument.

Mr. Halls next argues the court failed to advise him that he was charged with second degree assault – domestic violence during the colloquy. Relying on *State v. Buelna*, 83 Wn. App. 658, 922 P.2d 1371 (1996), he argues this is an abuse of discretion. In *Buelna*, the defendant "at least three times" stated that he "did not understand the charges." *Id.* at 660. The court, nevertheless, allowed him to proceed pro se and was later convicted as charged. Division Two of this court reversed, holding "Buelna's waiver of his right to the assistance of counsel was an uninformed and unintelligent waiver, because Buelna said that he did not understand the charges and because the record does not establish that Buelna was properly advised of the nature and seriousness of the charges and the possible penalties." *Id.* at 661.

But here, unlike in *Buelna*, Mr. Halls was informed of the potential penalty he faced (up to 10 years' incarceration and a $20,000 fine), and expressed no confusion about the charges. Although the court did not identify the charge by name during its colloquy with Mr. Halls, the specific charge was discussed previously on the record at

10

Mr. Hall's arraignment hearing. The court may look beyond the colloquy to find evidence on the record that shows the defendant's awareness of the consequences of self-representation. *Acrey*, 103 Wn.2d at 211. Given all, Mr. Halls knowingly, intelligently, and voluntarily waived his right to counsel. The trial court did not abuse its discretion in finding likewise.

### C. Competency

The issue is whether the trial court erred in not conducting an evidentiary hearing regarding Mr. Halls' competency. Mr. Halls contends an evidentiary hearing should have been conducted following the admittance of ESH's report.

Both the due process clause of the United States Constitution and RCW 10.77.050 forbid a criminal trial of an incompetent defendant. *Pate v. Robinson*, 383 U.S. 375, 378, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966); *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 861, 16 P.3d 610 (2001). In Washington, a defendant is competent if he is capable of understanding the nature of the proceedings and charges against him and is capable of assisting in his own defense. RCW 10.77.010(14); *State v. Lord*, 117 Wn.2d 829, 900, 822 P.2d 177 (1991). When an evidentiary basis exists creating doubt about the defendant's competency to stand trial, "'then due process requires that the trial court resolve that doubt.'" *State v. Johnston*, 84 Wn.2d 572, 576, 527 P.2d 1310 (1974) (quoting *State v. Peterson*, 90 Wash. 479, 482, 156 P. 542 (1916)). RCW 10.77.060(1) requires that a competency hearing be held "'[w]henever . . . there is reason to doubt [the defendant's] competency.'" *Lord*, 117 Wn.2d at 901 (quoting RCW

11

10.77.060)). Because Mr. Halls did not raise an insanity defense, "a hearing is required only if the court makes a threshold determination that there is reason to doubt the defendant's competency." *Lord*, 117 Wn.2d at 901.

No reason is shown to doubt Mr. Halls' competency to require an evidentiary hearing. ESH professionals found Mr. Halls did not have a mental disease or defect and had the capacity to understand the proceedings against him. Mr. Halls did not dispute this finding. Without more, the court properly entered a competency order without holding an evidentiary hearing. Mr. Halls fails to show a due process violation. At this juncture, we note Mr. Halls, pro se, challenges the court's competency determination in his SAG. But, appellate counsel adequately addressed this issue in the direct appeal. Therefore, further discussion on this issue is unwarranted. *See* RAP 10.10(a) (providing the purpose of an SAG is to "identify and discuss those matters which the defendant/appellant believes have not been adequately addressed by the brief filed by the defendant/appellant's counsel").

### D. Amended Information

Mr. Halls contends the amended information should be remanded for correction because it did not expressly state that the third degree assault charge was an alternative charge.

The purpose of the information is to notify the accused of the offense charged. *State v. Powell*, 34 Wn. App. 791, 793, 664 P.2d 1 (1983). An existing information may be amended to include an alternative means of committing a crime formerly charged.

12

No. 31244-5-III
*State v. Halls*

*Id.* Here, the State amended the information to include third degree assault. While the information did not expressly state it was an alternative charge, the record shows the trial judge expressly informed Mr. Halls, "The State charged you with Assault in the Second Degree, or basically in [the] alternative, Assault in the Third Degree for the same acts . . . . And Count II will be dismissed because you only get found guilty of one count." RP (April 9, 2012) at 82. This is sufficient; remand is unnecessary.

Affirmed and remanded for the limited, indicated action.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, A.C.J.

WE CONCUR:

Korsmo, J.

Fearing, J.

13