# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49319-5-II |
| Respondent, | |
| v. | PART PUBLISHED OPINION |
| RICHARD CARL HOWARD II, aka KING MILLER, | |
| Appellant. | |

MAXA, J. – Richard Howard appeals his conviction of unlawful imprisonment.  Howard argues that his decision to represent himself was not made knowingly and intelligently because the trial court did not inform him of the maximum sentences for the crimes charged against him.

We hold that Howard's waiver of his right to counsel was invalid and the trial court erred in allowing Howard to represent himself because the trial court did not inform him of the maximum sentences for the charged crimes and the record does not otherwise show that he knew the maximum sentences.  In the unpublished portion of this opinion, we address and reject claims that Howard asserts in a statement of additional grounds.

Accordingly, we reverse Howard's conviction and remand for a new trial.

FACTS

*Incident*

Howard had been in an on-and-off romantic relationship with Brandy Wright and was living in her house.  On April 13, 2016, Howard and Wright got into an argument and Wright

decided to leave the house. After packing some things, she attempted to leave through the front door. Howard stopped Wright from leaving by standing in front of the door and holding her.

Wright then tried to go to the back door. Howard grabbed her and pulled her back. They were yelling at each other and although Wright said that she wanted to leave, Howard would not let her go. Wright ran toward a bedroom and tried to get out through the window. Howard again pulled her back, out of the window and into the house. Eventually, Howard let Wright leave through the front door.

The State charged Howard with unlawful imprisonment and fourth degree assault.

*Motion for Self-Representation*

Before trial, Howard made a motion to represent himself. Defense counsel stated that Howard had represented himself in previous cases. When the trial court expressed concerns about Howard representing himself, Howard stated, "It is my constitutional right to proceed pro se, and I would just like to exercise it." Report of Proceedings (RP) (June 29, 2016) at 8.

The trial court and Howard engaged in a brief colloquy, which included the following exchange:

> THE COURT: Well, I believe that you're competent to stand trial. That's not the issue here. But whether you have any ability to really maintain a legitimate defense and a thoughtful defense when you are dealing with a prosecutor with many years of experience and years of legal training is the concern that I have. And it's a concern about your due process rights because the scales are not balanced in your favor under that sort of a match up.
>     The Court will not be giving you any special dispensation. The Court will not be giving you any legal advice. The Court will not be changing the rules simply because you are an unrepresented person. You will be held to the same standards as everybody else.
>     Do you understand that?
> MR. HOWARD: Yes.

No. 49319-5-II

> THE COURT: *I don't know what your offender score is, so I can't tell you exactly what your sentencing range would be*. But you are charged with unlawful imprisonment and assault in the fourth degree.
> *In the event of conviction, there is likely to be a substantial period of imprisonment involved*. Do you understand that?
> MR. HOWARD: Yes, sir.

RP (June 29, 2016) at 8-9 (emphasis added).

The trial court then entered an order granting Howard's motion to represent himself. The order stated that Howard had made a "knowing, intelligent, and voluntarily [sic] waiver of counsel." Clerk's Papers (CP) at 124.

*Conviction and Sentence*

The jury found Howard guilty of the unlawful imprisonment charge and not guilty of the assault charge. The court sentenced Howard to 51 months, the lower end of the standard sentence range.

Howard appeals his conviction.

ANALYSIS

Howard argues that his decision to represent himself and waive his right to counsel was not knowing and intelligent because the trial court did not inform him of the maximum penalty associated with his charge and he was not otherwise aware of the maximum penalty. We agree.

A.     LEGAL BACKGROUND

Article I, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution guarantee a criminal defendant the right to assistance of counsel. The same constitutional provisions also provide a criminal defendant with a right to self-representation. *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010). The right of self-

3

representation is "so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice." *Id.*

However, there is a tension between the right of self-representation and the right to counsel. *State v. DeWeese*, 117 Wn.2d 369, 376, 816 P.2d 1 (1991). A request for self-representation constitutes a waiver of the right to counsel. *Madsen*, 168 Wn.2d at 504. As a result, the right to self-representation is not absolute. *In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 659, 260 P.3d 874 (2011). A trial court can allow a defendant to represent himself only if his waiver of the right to counsel is voluntary, knowing, and intelligent. *Madsen*, 168 Wn.2d at 504. "*If counsel is properly waived*, a criminal defendant has a right to self-representation." *City of Bellevue v. Acrey*, 103 Wn.2d 203, 209, 691 P.2d 957 (1984) (emphasis added).

The preferred method for determining the validity of a waiver of the right to counsel is through a colloquy on the record between the trial court and the defendant. *State v. Mehrabian*, 175 Wn. App. 678, 690, 308 P.3d 660 (2013). "[T]he trial court should assume responsibility for assuring that decisions regarding self-representation are made with at least minimal knowledge of what the task entails." *Acrey*, 103 Wn.2d at 210. The trial court must make the defendant aware of the dangers and disadvantages of self-representation to ensure that the defendant " 'knows what he is doing and his choice is made with eyes open.' " *Rhome*, 172 Wn.2d at 659 (quoting *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)).

During this process, the trial court must indulge every reasonable presumption against waiver of the right to counsel. *Madsen*, 168 Wn.2d at 504. The trial court may deny a request for self-representation if the request is "made without a general understanding of the consequences." *Id.* at 505.

We review for abuse of discretion a trial court's decision on whether a defendant's waiver of the right to counsel is voluntary, knowing, and intelligent. *Rhome*, 172 Wn.2d at 667. A trial court abuses its discretion if its decision is manifestly unreasonable, based on untenable grounds, or based on an erroneous view of the law. *Id.* at 668. The burden of proof is on the defendant to show that the waiver of the right to counsel was not knowing and intelligent. *State v. Hahn*, 106 Wn.2d 885, 901, 726 P.2d 25 (1986).

Because the right to counsel is so fundamental, a trial court's erroneous finding that the defendant validly waived the right to counsel cannot be treated as harmless error. *State v. Silva*, 108 Wn. App. 536, 542, 31 P.3d 729 (2001).

B. REQUIREMENT THAT DEFENDANT HAVE KNOWLEDGE OF MAXIMUM PENALTY

The issue here is whether Howard was required to know the maximum sentences for unlawful imprisonment and fourth degree assault for his waiver of his right to counsel to be valid. We hold that Howard was required to know the maximum sentence, either through the trial court's colloquy or otherwise.

1. Applicable Cases

In *Acrey*, the Supreme Court established that a colloquy between the trial court and the defendant was the "preferred means of assuring that defendants understand the risks of self-representation." 103 Wn.2d at 211. The court stated:

> That colloquy, *at a minimum*, should consist of informing the defendant of the nature and classification of the charge, *the maximum penalty upon conviction* and that technical rules exist which will bind defendant in the presentation of his case.

*Id.* (emphasis added). The court stated that in the absence of a colloquy, the record "must somehow otherwise show that the defendant understood the seriousness of the charges and knew

5

the possible maximum penalty." *Id.* The court held that the defendant's waiver was invalid in that case because, among other things, there was no evidence that the defendant knew the possible penalties involved. *Id.* at 212.

In *DeWeese*, the Supreme Court stated that before self-representation is allowed, "[t]he requirements of a knowing and valid waiver must be met." 117 Wn.2d at 377. The court stated:

> A colloquy on the record is the preferred method; but in the absence of a colloquy, the record *must reflect* that the defendant understood the seriousness of the charge, *the possible maximum penalty involved*, and the existence of technical procedural rules governing the presentation of his defense.

*Id.* at 378 (emphasis added).

Since *Acrey*, Court of Appeals cases uniformly have recited the general rule that a trial court should inform the defendant of the possible maximum penalty for the charged crime when addressing a request for self-representation. *E.g.*, *Mehrabian*, 175 Wn. App. at 690; *State v. James*, 138 Wn. App. 628, 636, 158 P.3d 102 (2007); *State v. Lillard*, 122 Wn. App. 422, 427, 93 P.3d 969 (2004); *Silva*, 108 Wn. App. at 539; *State v. Sinclair*, 46 Wn. App. 433, 437, 730 P.2d 742 (1986).

Two cases have addressed a situation where a trial court allowed a defendant to represent himself without informing him of the maximum penalty for the charged crime. In *Silva*, the record showed that the defendant understood the nature and gravity of the charges against him, was aware of the risks attendant with self-representation, twice had represented himself in other trials, and had demonstrated exceptional skill in presenting pretrial motions. 108 Wn. App. at 540-41. However, the trial court's colloquy failed to inform the defendant of, among other things, the maximum possible penalties he faced. *Id.* at 540. The trial court granted the defendant's motion to represent himself. *Id.* at 538.

Division One of this court reversed because the defendant was not advised of the maximum penalty for the charged crimes. *Id.* The court stated:

> [E]ven the most skillful of defendants cannot make an intelligent choice without knowledge of all facts material to the decision. Silva was never advised of the maximum possible penalties for the crimes with which he was charged. Absent this critical information, Silva could not make a knowledgeable waiver of his constitutional right to counsel.

*Id.* at 541.

In *Sinclair*, the defendant was charged with burglary. 46 Wn. App. at 434. The record showed that the defendant was aware of the risks of self-representation, the task involved in representing himself, and the nature and classification of the charge. *Id.* at 438. The trial court did not expressly advise the defendant of the maximum penalty for burglary, but the record reflected that the defendant was otherwise aware of the penalty. *Id.* at 438-39. Division One stated:

> Although the court failed to specifically inform him of the maximum penalty upon conviction, Sinclair had several prior convictions, including three for burglary, one as recent as 1980. We conclude, therefore, that he was well aware of the possible consequences of another conviction.

*Id.* As a result, the court held that the defendant's waiver of the right to counsel was valid. *Id.* at 439.

2. Informed or Otherwise Aware of Maximum Sentence

The State argues that a defendant's lack of knowledge of the maximum penalty for the charged crime does not require reversal if the totality of the circumstances show that the defendant's waiver of the right to counsel was knowing and intelligent. We disagree.

In *Acrey*, the Supreme Court stated that the trial court's colloquy "should" inform the defendant of the maximum penalty for the charged crime, not that the colloquy "must" inform

7

the defendant. 103 Wn.2d at 211. But the court also stated that the trial court "at a minimum" should provide that information. *Id.* The court also stated that, absent a colloquy, the record "*must*" otherwise show that the defendant knew the possible maximum penalty. *Id.* (emphasis added). This language suggests that the defendant's knowledge of the maximum penalty for the charged crime is a *minimum requirement* for finding a valid waiver. And the Supreme Court in *DeWeese* used the word "must" when stating the rule. 117 Wn.2d at 378.

Further, the court in *Silva* clearly stated the rule in absolute terms. The court emphasized that without knowing the maximum penalty for the charged crime, a defendant cannot make a knowledgeable waiver of the right to counsel. *Silva*, 108 Wn. App. 541.

Finally, no court has held or even suggested that a defendant can knowingly or intelligently waive the right to counsel without being informed or otherwise being aware of the maximum penalty for the charged crime. And no court has held that a "totality of the circumstances" can overcome the defendant's lack of knowledge regarding the maximum penalty.

We agree with the analysis in *Silva*. The maximum penalty for the charged crime is essential information that a defendant needs in deciding whether to represent himself or herself. A defendant may be willing to represent himself when facing a lesser penalty but not when facing a greater penalty. Therefore, if a defendant does not know the maximum penalty for the charged crime, we cannot say that the defendant is making the decision to represent himself or herself knowingly.

Accordingly, we hold that a waiver of the right to counsel is invalid if the trial court does not inform the defendant of the maximum penalty for the charged crime and the defendant is not otherwise aware of the maximum penalty.

3. Knowing Waiver Analysis

Here, the trial court engaged in a colloquy in which it emphasized to Howard some of the difficulties he would face in representing himself. But the court failed to inform Howard of the maximum penalties for unlawful imprisonment and fourth degree assault. The court stated only that, although it could not tell Howard his sentencing range, "there is likely to be a substantial period of imprisonment involved." RP (June 29, 2016) at 9. In addition, nothing elsewhere in the record shows that Howard otherwise knew the maximum penalties for his charged offenses.

The State argues that even though the trial court did not specify the exact maximum sentence, informing Howard that he faced a "substantial period of imprisonment" was sufficient to establish a valid waiver. RP (June 29, 2016) at 9. However, the term "substantial" was not precise enough to give Howard meaningful guidance; a "substantial" sentence for one person might be far lower than the maximum penalties for the offenses with which Howard was charged. Unlawful imprisonment is a class C felony, RCW 9A.40.040(2), with a maximum penalty of confinement in a state correctional institution for five years. RCW 9A.20.021(1)(c). Fourth degree assault is a gross misdemeanor, RCW 9A.36.041(2), with a maximum penalty of imprisonment in the county jail of 364 days. RCW 9A.20.021(2). Howard may not have understood how much prison time he actually faced.

The trial court's failure to inform Howard of the maximum penalty for the charged crimes and the absence of anything in the record showing that Howard was otherwise aware of

the maximum penalty meant that his waiver of the right to counsel could not be knowing and intelligent. Accordingly, we hold that the trial court erred in granting Howard's motion to represent himself.

## CONCLUSION

We reverse Howard's conviction and remand for a new trial.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

## ADDITIONAL ANALYSIS

Howard asserts multiple claims in a statement of additional grounds. We address only those claims that could affect the State's ability to move forward with the case on remand.

A.    SUFFICIENCY OF THE EVIDENCE

Howard asserts that the State failed to present sufficient evidence to support his unlawful imprisonment conviction. Specifically, he asserts that the State did not prove that he acted "knowingly" in restraining Wright. We disagree.

When evaluating the sufficiency of evidence for a conviction, the test is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). We assume the truth of the State's evidence and all reasonable inferences drawn from that evidence when evaluating whether sufficient evidence exists. *Id.* at 106.

Under RCW 9A.40.040(1), a person is guilty of unlawful imprisonment if he "knowingly restrains another person." RCW 9A.40.010 defines "restrain" as "restrict[ing] a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty." A person acts "knowingly" when

> (i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
> (ii) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(b).

Here, the evidence at trial was sufficient to allow a rational jury to conclude that Howard knowingly restrained Wright. First, Wright testified that Howard physically prevented her from leaving the house on multiple occasions, either by holding her or by pulling her away from the house's exits. He did this even after she told him that she wanted to leave. Second, Wright testified that she believed Howard acted intentionally in trying to prevent her from leaving. This testimony could allow a rational jury to conclude that Howard knew he was restraining Wright without her consent.

Accordingly, we reject Howard's claim that the State presented insufficient evidence to support his conviction of unlawful imprisonment.

B.    ADEQUACY OF INFORMATION

Howard asserts that the State's charging document failed to inform him of all essential elements of his unlawful imprisonment charge. We disagree.

To provide notice to a defendant of the nature of the accusation against him, a charging document must include all essential elements of a crime. *State v. Zillyette*, 178 Wn.2d 153, 158,

11

307 P.3d 712 (2013). This requirement comes from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *Id.* A two-pronged test determines the validity of the State's charging document: "(1) do the necessary elements appear in any form, or by fair construction, on the face of the document and, if so, (2) can the defendant show he or she was actually prejudiced by the unartful language." *Id.* at 162.

Here, the relevant statute, RCW 9A.40.040, provides, "A person is guilty of unlawful imprisonment if he or she knowingly restrains another person." The information charging Howard stated that he "did unlawfully, feloniously, and knowingly restrain another person, to-wit: Brandy Wright, contrary to RCW 9A.40.040." CP at 3.

This statement included the essential elements of unlawful imprisonment: that Howard restrained Wright and that he did so knowingly. The language is also the same in all material respects to the language at issue in *State v. Johnson*, which the Supreme Court held to be sufficient. 180 Wn.2d 295, 301-02, 325 P.3d 135 (2014). Finally, Howard has not shown what language potentially confused him or how he was in fact prejudiced.

Accordingly, we reject Howard's claim that the charging information omitted an essential element of his unlawful imprisonment charge.

C.     TIME FOR TRIAL

A defendant's right to be brought to trial in a timely manner is governed by CrR 3.3(b). That rule, which is consistent with constitutional requirements, provides that a defendant generally must be brought to trial within 60 days of arraignment. CrR 3.3(b); *State v. Ollivier*, 178 Wn.2d 813, 823, 312 P.3d 1 (2013). However, certain time periods are "excluded in computing the time for trial." CrR 3.3(e); *see Ollivier*, 178 Wn.2d at 823. One such period

occurs during competency proceedings, including under chapter 10.77 RCW. CrR 3.3(e)(1); *see State v. Harris*, 122 Wn. App. 498, 505, 94 P.3d 379 (2004). In cases involving competency proceedings, the defendant must be brought to trial within the longer of 60 days from arraignment or 30 days after the trial court's written order finding the defendant to be competent. CrR 3.3(b)(1), (b)(5), (e)(1).

Here, Howard apparently was arraigned on April 14, 2016. The trial court ordered a competency evaluation on May 19 and entered an order finding Howard to be competent on June 29. Therefore, the rule required Howard to be brought to trial within 30 days on June 29, a period ending on July 30. The first day of trial was July 27, a date within the allotted period.

Accordingly, we hold that Howard's time for trial rights were not violated.

CONCLUSION

We reverse Howard's conviction and remand for a new trial. However, we reject Howard's assertions that the evidence was insufficient to support his conviction, the information was deficient, and his time to trial rights were violated.

MAXA, J.

We concur:

WORSWICK, J.

BJORGEN, C.J.

13