IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35854-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JARED ANTHONY WINTERER, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Jared Anthony Winterer appeals his conviction for stalking, arguing he did not validly waive his right to counsel. While the record reflects Mr. Winterer made an unequivocal request to proceed to trial without counsel, there are not sufficient facts to conclude his waiver of counsel was knowing, voluntary, and intelligent. We therefore reverse Mr. Winterer's conviction and remand for retrial.

FACTS

Jared Winterer was convicted of a single count of stalking after he represented himself at a jury trial. Prior to trial, Mr. Winterer was represented by several attorneys. His dissatisfaction with the attorneys resulted in several changes of counsel and, ultimately, Mr. Winterer's pro se status.

Mr. Winterer's first attorney was appointed on August 9, 2016. At that time,

Mr. Winterer was charged with one count of stalking, two counts of misdemeanor

harassment, seven counts of felony harassment, and six counts of second degree

malicious mischief. Mr. Winterer began complaining about his attorney almost

immediately after counsel's appointment. The attorney moved to withdraw on

November 28, 2016. At the hearing on counsel's motion to withdraw,[1] Mr. Winterer

requested new counsel. He also asked the court to sign an order he had prepared.

This created confusion as to whether Mr. Winterer was asking to represent himself.

The court eventually interpreted Mr. Winterer's actions as a request to proceed pro se.

Once it was determined that Mr. Winterer was requesting self-representation,

the court engaged Mr. Winterer in a colloquy. The court discussed the procedural

expectations of self-representation. Mr. Winterer was told he would be held to the

same rules as an attorney and that his decision to proceed without counsel was likely

disadvantageous. However, the court never discussed the penalties Mr. Winterer might

face if he was convicted at trial. At the end of the colloquy, Mr. Winterer confirmed

that he wanted to represent himself with the help of standby counsel. The court ruled

---

[1] The hearing was also scheduled to address competency. The court found Mr. Winterer competent to stand trial.

2

that Mr. Winterer would be permitted to represent himself. It explained that this meant the prosecuting attorney would be able to contact Mr. Winterer directly. The court also explained standby counsel's limited role. The proceedings were then adjourned.

Mr. Winterer continued pro se for four months. During that time he made several filings with the court. But by March 10, 2017, Mr. Winterer expressed misgivings about his pro se status. He sought to revoke his waiver of the right to counsel. The court acquiesced to Mr. Winterer's change of heart and appointed new counsel on March 14.

After a series of fits and starts, Mr. Winterer once again changed his mind about self-representation. He complained about his attorney and stated his desire to revert to pro se status. The court addressed Mr. Winterer's request for self-representation on January 5, 2018.[2] The trial court expressed concern about Mr. Winterer vacillating on the issue of self-representation. Mr. Winterer stated he needed a standby attorney to help subpoena witnesses and discuss the rules of evidence, but he wanted to show the jury the evidence and explain his defense. Mr. Winterer assured the court that he would not change his mind on self-representation again. The court reserved ruling on Mr. Winterer's request and asked defense counsel to research whether Mr. Winterer could

---

[2] The January 5 hearing was also held for sentencing on a separate charge. Mr. Winterer had been represented by counsel throughout trial on the separate case.

waive his right to counsel for a second time. Defense counsel provided that research to the court.

Mr. Winterer's request for self-representation was re-addressed on February 2, 2018. The court began by confirming that Mr. Winterer still wished to represent himself with the assistance of standby counsel. The court then went on to explain the procedural expectations of Mr. Winterer. Among other things, the court explained that the prosecutor sought to restrict Mr. Winterer's method of cross-examination of the complaining witness (a corrections officer). The court also explained the limited role of standby counsel. After this discussion, the court ruled Mr. Winterer would be allowed to represent himself at trial and permitted his defense attorney to withdraw as his representative and to serve as standby counsel. At no point during the February 2 hearing did the court discuss the penalties Mr. Winterer might face if he was convicted as charged.

The case proceeded to trial on February 6, 2018. On the day of trial, the State amended Mr. Winterer's information. The amendment reduced the charges to a single count of stalking. It also added a criminal history aggravator.[3] Mr. Winterer was advised

---

[3] During the February 2 hearing, the prosecutor mentioned that she would be amending the charges down to one count of stalking. No mention was made of the aggravator during the February 2 hearing.

4

of the contents of the amended information and entered a not guilty plea. The court did

not question Mr. Winterer about whether the amended information changed his position

on self-representation. Nor did the court explain the potential penalties applicable to the

amended information. Mr. Winterer indicated that he did not understand the change to

the information or its consequences.

The jury convicted Mr. Winterer on the single count of stalking. The trial

court found the aggravator was present and justified an exceptional departure upward

in Mr. Winterer's sentence. It sentenced him to the statutory maximum of 120 months'

confinement.

Mr. Winterer brings this timely appeal from his judgment and sentence.

ANALYSIS

Criminal defendants enjoy competing rights to counsel and self-representation.

*State v. Curry*, 191 Wn.2d 475, 482-83, 423 P.3d 179 (2018). The default right is the

right to counsel. In order for the right to counsel to give way to the right to self-

representation, two things must happen: (1) the defendant must make a timely and

unequivocal request for self-representation, and (2) the trial court must establish that the

defendant has made a knowing, voluntary, and intelligent waiver of the right to counsel.

*Id.*; s*ee also State v. Burns*, No. 95528-0, slip op. at 14 (Wash. Apr. 18, 2019),

https://www.courts.wa.gov/opinions/pdf/955280.pdf. "Both the United States Supreme

Court and [the Washington Supreme Court] have directed courts to indulge in '*every*

*reasonable presumption* against a defendant's waiver of his or her right to counsel.'"

*Burns*, slip op. at 13 (internal quotation marks omitted) (quoting *In re Det. of Turay*,

139 Wn.2d 379, 396, 986 P.2d 790 (1999)). Mr. Winterer challenges both aspects of

the trial court's self-representation decision. We review the trial court's determination

for abuse of discretion. *Curry*, 191 Wn.2d at 483.

The trial court did not abuse its discretion in finding Mr. Winterer unequivocally

asserted the right to self-representation. By the time Mr. Winterer proceeded to trial in

February 2018, he had already experienced what it was like to proceed without counsel

during his first pro se stint. He repeatedly and explicitly requested the court to allow him

to represent himself at trial. The court engaged Mr. Winterer in several discussions over

the course of multiple hearings in order to confirm Mr. Winterer wanted to waive his right

to counsel and proceed to trial pro se. This process amply satisfied the threshold inquiry

of whether Mr. Winterer's request for self-representation was unequivocal. *See Curry*,

191 Wn.2d at 491-95.

Where the trial court fell short was in the second step of the waiver process. Once a trial court determines the defendant has made a timely and unequivocal request for self-representation, the court "must then determine if the request is knowing, voluntary, and intelligent." *Burns*, slip op. at 14. The general method for doing so is to engage in an on-the-record colloquy. "The colloquy should generally include a discussion of the nature of the charges against the defendant, the maximum penalty, and the fact that the defendant will be subject to the technical and procedural rules of the court in the presentation of his [or her] case." *Id.*

Here, the trial court never engaged Mr. Winterer in a full colloquy regarding whether his waiver of counsel was knowing, voluntary, and intelligent. Although the court discussed the legal rules Mr. Winterer would be expected to follow at trial, there was no mention of possible penalties.

The lack of a full colloquy is not necessarily fatal. Where no colloquy exists, we may examine the record to determine whether the defendant made an informed choice about the waiver of counsel. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 211, 691 P.2d 957 (1984). To uphold the validity of a waiver of counsel in the absence of a colloquy, the record must somehow "show that the defendant understood the seriousness of the charges and knew the possible maximum penalty. The record should also show that the

7

defendant was aware of the existence of technical [legal] rules and that presenting a defense is not just a matter of telling one's story." *Id.* This type of record review is exacting and will "only rarely" result in affirming the validity of a waiver. *Id.*

The record here is not sufficient to permit an inference of a valid waiver. Nowhere in the existing record is there any indication that Mr. Winterer was advised of maximum penalties prior to being allowed to proceed pro se. Even after the State filed an amended information on the eve of trial, and Mr. Winterer expressed confusion about the meaning of the aggravating circumstance allegation, no advice of maximum penalties occurred.

Based on the foregoing, the trial court failed to satisfy the second portion of the waiver inquiry. We recognize that Mr. Winterer was a difficult litigant. He also made very clear that he wanted to proceed pro se. However, the gaps in the record pertaining to whether Mr. Winterer knowingly, voluntarily, and intelligently waived counsel require reversal.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Pursuant to RAP 10.10, Mr. Winterer has submitted a statement of additional grounds for review (SAG). The majority of Mr. Winterer's claims are either rendered moot by our reversal of conviction, reliant on facts outside the record, or both.

In addition, to the extent Mr. Winterer has legal challenges to the State's charge or evidentiary claims, those can be raised on remand.

The one challenge that must be addressed at this time is Mr. Winterer's claim that the State presented insufficient evidence to justify his conviction. If Mr. Winterer was to succeed on this claim, double jeopardy[4] would require dismissal of Mr. Winterer's case with prejudice. *State v. Rodgers*, 146 Wn.2d 55, 60, 43 P.3d 1 (2002).

Mr. Winterer claims there was no evidence he actually sent the corrections officer the harassing messages that formed the basis for his stalking charge. He also challenges the credibility of the corrections officer's trial testimony. However, Mr. Winterer's argument fails to acknowledge that witness testimony is evidence. *See Loyola Univ. v. Sun Underwriters Ins. Co. of N.Y.*, 93 F. Supp. 186, 190 (E.D. La. 1950), *aff'd*, 196 F.2d 169 (5th Cir. 1952); *State v. White*, noted at 135 Wn. App. 1013, 2006 WL 2859376, at *3. The corrections officer testified that she received messages from Mr. Winterer while he was in jail and in prison. A claim of insufficiency admits the truth of that evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Moreover, Mr. Winterer's attack on the corrections officer's credibility is not reviewable on appeal. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017). Because a reasonable juror

---

[4] U.S. CONST. amend V; WASH. CONST. art. I, § 9.

9

could find that these messages were sent by Mr. Winterer, based on the corrections officer's testimony, the evidence was sufficient to justify Mr. Winterer's conviction. *State v. Boyle*, 183 Wn. App. 1, 6, 335 P.3d 954 (2014).

## CONCLUSION

We reverse and remand for a new trial.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____        _____
Lawrence-Berrey, C.J.                              Fearing, J.