IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                  Respondent,<br><br>        v.<br><br>DELANE MICHAEL DUFLOTH,<br><br>                  Appellant. | No. 81402-8-I<br><br>DIVISION ONE<br><br>OPINION PUBLISHED IN PART |

COBURN, J. — Dufloth appeals his conviction for burglary in the second degree. He argues that the trial court erred by not ordering a competency evaluation when the court was aware that another court found him not competent and ordered restoration that had not taken place. Dufloth also contends that the prosecutor committed misconduct during closing argument. We agree and reverse and remand.

FACTS

On the evening of July 4, 2019, resident manager Jonathan Williams was notified that a security alarm was triggered at the Seattle Salvation Army warehouse. At the time of the alarm, the warehouse was closed. Williams and others entered the building to look for the intruder. Williams testified that the warehouse had been disturbed with boxes overturned and inventory, including purses, thrown on the floor. Williams heard Dufloth locked inside an emergency

Citations and pin cites are based on the Westlaw online version of the cited material.

stairwell.

Dufloth claimed, through the locked door, to be a Salvation Army employee who had fallen asleep in the warehouse. Williams told Dufloth he was calling police. Williams then heard a crash and opened the stairwell door to find that Dufloth had forcefully escaped through another door leading to an administrative office. Dufloth locked himself inside the office until after police arrived. When searching the stairwell, police recovered a bicycle, a jacket, and a purse, the only item with a Salvation Army price tag. A police dog, after obtaining Dufloth's scent, alerted to the jacket. Nearby, police also discovered a black eyeglass case containing cash and glass "drug pipes." Dufloth admitted the case belonged to him.[1] Police arrested Dufloth. He was later charged with burglary in the second degree.

Though he was represented by counsel, Dufloth sent multiple letters to the court before his trial, including a pro se motion to dismiss.[2] In a handwritten letter filed a week before trial, Dufloth wrote,

> The Kitsap County Superior Court found me incompetent to proceed with Trial. I was given an evaluation by the Western State Hospital. [T]he Court accepted the opinion and ordered me to a restoration period to restore my competency. I believe that my constitutional right to a fair trial has been violated. Due to my current, worsening, mental health conditions . . . where I become delusional, having hallucinations. These hallucinations effect me to the point that I believe the voices in my head. These voices, Carol.

---

[1] Dufloth initially denied the case belonged to him but claimed ownership once the officer indicated that it also contained $40 in cash.

[2] In these pro se communications with the trial court, Dufloth objected to trial continuances, discussed the availability of his witnesses, and motioned to have his case dismissed on grounds that the State's charging documents were insufficient. When asked about the motion to dismiss, Dufloth's defense counsel told the court that he, as counsel, did not wish to proceed with the motion.

2

Tells me things to confuse me to where I don't understand or comprehend what[']s going on, and why all these rights of mine are violated.

I am currently experiencing a major manic episode and am in need of medication and help from Western State doctors and medication to bring me back to competency – normal.

Additionally, Dufloth wrote in the letter that he had "not been sent to WSH because of this burglary charge" and that his attorney was "not addressing the court with this issue."

During pretrial motions, the court asked defense counsel about Dufloth's claim of incompetency:

> THE COURT: In this letter, Mr. Dufloth is stating that he believes he is incompetent. . . . I take that to be basically a request for an evaluation pursuant to RCW 10.77.060 . . . I'll ask counsel, both counsel, have you seen this, and is anybody going to pursue this?
>
> [DEFENSE COUNSEL]: [T]his issue has been a common theme during the course of my representation with Mr. Dufloth. I will tell the Court he was, I believe, ruled to be incompetent in Kitsap or Kittitas County.
>
> THE COURT: Kitsap. Yeah, there's a reference to his having been found–
>
> [DEFENSE COUNSEL] Right. . . . I will tell the Court, I am not raising competency at this point. I have informed [the prosecutor] of that.
>
> THE COURT: What was your understanding of what the Kitsap County Court did?
>
> [DEFENSE COUNSEL]: They ordered him to Western State Hospital. I believe he was out of custody at that point. He was ordered to Western State Hospital for restoration.
>
> THE COURT: And did it happen?
>
> [DEFENSE COUNSEL]: And it did not happen. These charges came about and Mr. Dufloth found himself back in custody, and so here we are. I do not have competency concerns. I'm not raising those at this point.
>
> THE COURT: Okay.

3

[DEFENSE COUNSEL]: I've spoken to [Dufloth] multiple times, even as recently as well, and so I'm not raising competency. Of course, competency is a fluid statement, so if it changes, as an officer of the Court, I'll bring that to the Court's attention to address that. But at this point, I'm not raising – I'm not asking for a competency evaluation.

THE COURT: Okay. Well, in that case, since neither party has briefed these issues, and I have nothing in front of me that I can – I, frankly, have not seen an issue where a party has raised a motion, but his own lawyer declines to pursue it. And then, I guess, you're saying that absolves the Court of having to rule on it, because the lawyers are not engaged on that issue.

The prosecutor then commented that if Dufloth wanted to proceed with a pro se motion he could request to represent himself, because "if he wants [defense counsel] to represent him, he has to kind of live with that representation, his choices". The court then replied, "Well, there's no motion before the Court right now to discharge counsel and proceed without counsel on a pro se basis. So, let's go to the next issue then." Dufloth's competency was not addressed again at trial.

A jury convicted Dufloth of burglary in the second degree. Dufloth appeals.

DISCUSSION

Competency for Trial

We review a trial court's decision on whether to order a competency examination for an abuse of discretion. State v. McCarthy, 193 Wn.2d 792, 803, 446 P.3d 167 (2019). A trial court abuses its discretion when it reaches a conclusion on untenable or unreasonable grounds. State v. Heddrick, 166 Wn.2d 898, 908, 215 P.3d 201 (2009).

Dufloth argues that the trial court erred by not ordering a competency hearing pursuant to RCW 10.77.060. We agree.

An accused person must be legally competent to stand trial. State v. Coley, 180 Wn.2d 543, 551, 326 P.3d 702 (2014); RCW 10.77.050. The fundamental right not to stand trial unless competent is guaranteed by the due process clause of the Fourteenth Amendment. See U.S. CONST. amend. XIV; State v. Ortiz-Abrego, 187 Wn.2d 394, 402-03, 387 P.3d 638 (2017). "Failure to observe procedures adequate to protect an accused's right not to be tried while incompetent to stand trial is a denial of due process." In re Fleming, 142 Wn.2d 853, 863, 16 P.3d 610 (2001). Defendants are incompetent if they lack "the capacity to understand the nature of the proceedings against [them] or to assist in [their] own defense as a result of mental disease or defect." RCW 10.77.010(16). Washington law requires that a "court on its own motion or on the motion of any party" must order a mental health evaluation whenever there is "reason to doubt" a defendant's competency. RCW 10.77.060(1)(a).

As an initial matter, the State maintains that there is "nothing in the record to support Dufloth's statement that he had previously been found incompetent in Kitsap County." The State argues that because the record lacks facts supporting Dufloth's claim that he was incompetent, which the State characterizes as nothing more than a "self-serving letter," Dufloth may only raise this issue through a personal restraint petition because we cannot consider facts outside the record.

The State misunderstands the basis in which a competency evaluation

5

should be ordered. While the court could have ordered Dufloth's counsel to obtain a copy of the Kitsap County order finding Dufloth not competent, the record is sufficiently complete to allow review.

Dufloth's counsel is an officer of the court. See State v. White, 94 Wn.2d 498, 502, 617 P.2d 998 (1980) ("An attorney is an officer of the court. As such, he owes it a duty of frankness and honesty."). He confirmed to the court that another court had found his client not competent and ordered restoration, which was interrupted by this burglary charge.[3] Defense counsel's representation also confirmed that Dufloth has repeatedly raised this issue and that counsel was not inclined to pursue it based on counsel's own opinion that competency was not at issue. Neither the court nor the prosecutor ever questioned the existence of the incompetency finding. Based on this record, we are left to determine whether there was a reason to doubt Dufloth's competency. We proceed with our analysis based on the record before us.

Dufloth contends that the trial court erred when it failed to order a competency hearing on the basis that defense counsel declined to make such a motion. We agree.

RCW 10.77.060(1)(a) permits "*any party*" to motion the court for a competency evaluation. A defendant is a party. It is undisputed that the court understood Dufloth's letter stating, "I take that to be basically a request for an evaluation pursuant to RCW 10.77.060." Despite Dufloth's request and defense

---

[3] It is unclear from the record exactly how close in time the incompetency finding was to Dufloth's July 2019 arrest and February 2020 trial.

counsel's confirmation that Dufloth had been found not competent, the court gave great deference to counsel's representation that counsel did not have competency concerns.

While the defense bears the "threshold burden" of establishing that there is a reason to doubt the defendant's competency, and "although 'considerable weight' should be given to the attorney's opinion regarding the client's competency, that opinion is not necessarily dispositive. Instead, the ultimate question for the trial court is whether there is a 'factual basis' to doubt the defendant's competence." State v. Woods, 143 Wn.2d 561, 604-05, 23 P.3d 1046 (2001) (quoting State v. Lord, 117 Wn.2d 829, 903, 822 P.2d 177 (1991)). Defense counsel may not waive a defendant's right not to stand trial while incompetent. Fleming, 142 Wn.2d at 866.

The court misapplied the law when it determined that it was absolved of having to make a ruling "because the lawyers are not engaged on that issue." Even where no party moves for a competency hearing, the court "shall," on its own motion, order a formal evaluation whenever there is reason to doubt a defendant's competency. RCW 10.77.060(1)(a). The procedures of the competency statute are mandatory. Fleming, 142 Wn.2d at 863.

The question before us, then, is whether the record reflects that there was a "factual basis" for the trial court to doubt the competency of Dufloth.

A "reason to doubt" is "not definitive, but vests a large measure of discretion" to the trial court. McCarthy, 193 Wn.2d at 804 (quoting City of Seattle v. Gordon, 39 Wn. App. 437, 441, 693 P.2d 741 (1985)). Though there are no

7

"fixed signs" that trigger a competency hearing, a trial court might consider a defendant's demeanor, conduct, and medical and psychiatric reports. State v. Fedoruk, 5 Wn. App. 2d 317, 336, 426 P.3d 757 (2018).

The State argues that the trial court properly exercised its discretion not to order a competency evaluation because Dufloth appeared competent, exhibiting "no outbursts, unusual behavior," and his pro se communications "displayed a sophisticated understanding of the trial process." However, this argument fails to recognize the difference between "a reason to doubt" a defendant's competency and "an actual determination of competency." Fedoruk, 5 Wn. App. 2d at 335.

The question before the trial court and before us on appeal is not whether Dufloth was actually competent at the time of his trial. The only relevant question is whether there was a reason to doubt his competency.

This was not a case where the defendant claimed to have a competency issue without any support in the record. The court had undisputed confirmation from defense counsel, an officer of the court, that another superior court had found Dufloth not competent and ordered restoration at Western State Hospital. This strongly suggested the existence of medical and psychiatric reports supporting that finding. That is because when a competency evaluation is ordered, the court "shall either appoint or request the secretary to designate a *qualified expert or professional person*, who shall be approved by the prosecuting attorney, to evaluate and report upon the mental condition of the defendant." RCW 10.77.060(1)(a) (emphasis added). Counsel further disclosed that restoration had not taken place because "[t]hese charges came about and Mr.

Dufloth found himself back in custody, and so here we are."

The trial court abused its discretion by failing to order a competency evaluation because the record supports a reason to doubt whether Dufloth was competent to stand trial. We reverse and remand for further proceedings. Although we remand to the trial court, we address the following issue because it may repeat upon further proceedings on remand.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. See RCW 2.06.040.

## Prosecutorial Misconduct

To prevail on a prosecutorial misconduct claim, a defendant must demonstrate that a prosecutor's conduct was both improper and prejudicial. State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). To show prejudice, a defendant must show there is a "substantial likelihood" the prosecutor's misconduct affected the jury's verdict. State v. Thorgerson, 172 Wn.2d 438, 442-443, 258 P.3d 43 (2011). Where a defendant fails to object to a prosecutor's improper statement, the defendant waives the error unless the statement is so "flagrant and ill intentioned" that the prejudice could not have been remedied by an instruction to the jury. Id. at 443.

A prosecutor has wide discretion to make reasonable inferences from the evidence. In re Glasmann, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). However, a prosecutor acts improperly where they seek a conviction based upon emotion rather than reason. State v. Craven, 15 Wn. App. 2d 380, 385, 475 P.3d 1038

(2020).

The prosecutor first introduced Williams to the jury by having him explain his success story thanks to the Salvation Army.  During trial, the prosecutor twice asked resident manager Williams how the burglary made him "feel."  Both times the trial court sustained defense counsel's objections.[4]  At a sidebar conversation, the prosecutor explained to the trial court why he wished to ask Williams how he felt about the burglary:

> The Salvation Army is an organization and obviously is not a human being. Defense made a point that the building doesn't exist anymore, that everything was cleaned up the next day, that nothing was really damaged or broken. And so, essentially, it's a victimless crime, and so I think the way that this man felt about Mr. Dufloth breaking into the building and stealing stuff is relevant to this case, so that's why I wanted to ask the question.

The prosecutor again emphasized how Williams turned his life around both at the beginning of closing and at the end of rebuttal argument.  The prosecutor opened closing argument by stating,

> Jonathan Williams was in the Snohomish County Jail and he decided to turn his life around. After he was released, he immediately went to the Salvation Army and checked himself into a six-month rehab program. He completed that program and then became a resident manager, responsible for ninety guys like him who were fighting for their sobriety. He worked in that position for eighteen months before moving to Everett, enrolling in school to become a commercial truck driver and celebrating two years of sobriety. Jonathan Williams is a success story, and his success is due in large part to the Salvation Army. The very place that helped him turn his life around, this man, Mr. Delane Dufloth, chose to burglarize.

The prosecutor then in rebuttal argument stated,

> The last thing I want to talk about is something that you might have thought yourself or you might have thought about subconsciously.  When

---

[4] The State did not cross appeal the court's ruling.

Mr. Poisel was cross-examining Mr. Williams, he asked him some questions. He said, "Was the purse seized [by] the police?" "Was the bike seized by the police?" "Was the jacket seized by the police?" No. Salvation Army had gotten all those items back. He asked him, "Did the sorting area get picked up the next day? Everything put back in its proper place?" Mr. Williams said, "Yes." He asked him about the door. Mr. Williams said that it got fixed. And he asked him about the building, and Mr. Williams said that that building no longer exists. So, you might be thinking, who cares, why does this matter? But Mr. Williams testified this is how the Salvation Army survives, how it operates. They accept donations from the public, they sort them, they price them, and then they sell them second-hand. That's how they generate revenue and that's how they operate. That's how they support programs like the one that turns Mr. Williams's life around.

Defense did not object to the prosecutor's closing statements.

The State contends that the prosecutor's comments were appropriate because they followed up testimony that defense elicited regarding the apparent *de minimus* effect of the crime. The State contends that "defense counsel brought to the jury's attention during the trial the fact that the warehouse was cleaned up following the burglary, no property was damaged or broken, and the Salvation Army facility no longer exists. The prosecutor's reference to the Salvation Army in closing argument merely provided context to Dufloth's actions and was intended to discourage the jury from discounting the seriousness of the crime because it might be considered "victimless."

First of all, the prosecutor misheard the testimony. When defense asked Williams about repairing the broken door, he said, "the frame was never repaired, but that's to my knowledge. I know for quite some time after that, it was not repaired. The building was being sold." Regardless, though the prosecutor may have feared that the jury would perceive the crime as victimless, that is not what defense argued. The record suggests defense introduced the fact that the area

11

was cleaned up and items put away to argue that the police failed to thoroughly investigate. In closing, defense argued,

> Within, the days that window was closed. That evidence that was on that window of potential fingerprints or potential DNA is gone. The property that was in the stairwell was redistributed somewhere else within the warehouse. The value of that, any sort of forensic tests that they could have done to corroborate anything or prove that Mr. Dufloth took it is gone.

A fear that the jury may view the case as a victimless crime, is no excuse to solicit a conviction based on emotion. The prosecutor's argument asked the jury to consider how Williams had turned his life around through the Salvation Army's rehabilitation program. Prosecutors must seek convictions based only on probative evidence and sound reason, and not based on emotion. Craven, 15 Wn. App. 2d at 385.

The prosecutor's statements were improper. However, because we reverse Dufloth's conviction on other grounds, we need not reach whether the prosecutor's statements were so flagrant and ill-intentioned that the prejudice could not have been remedied by an instruction to the jury.

CONCLUSION

When a court is aware that a defendant has been found not competent and has not been restored, it raises a doubt whether the defendant is currently competent, and a competency evaluation should be ordered. We reverse and

12

remand to the trial court for further proceedings consistent with this opinion.

Coburn, J.

WE CONCUR:

Bowman, J.          Dwyer, J.