IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  39770-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ENCARNACION SALAS, IV, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Encarnacion Salas IV appeals his conviction for aggravated first degree murder, raising several issues on appeal.  First, Salas contends the trial court erred when it failed to order a competency evaluation after standby counsel raised concerns about his competency to proceed to trial.  Second, he challenges the trial court's finding that Salas's waiver of counsel was knowing, intelligent, and voluntary.  Specifically, he contends that his Sixth Amendment right was violated and reversal is required where the

court told him only that a life without parole sentence was possible, not that it was mandatory. Additionally, he argues that the victim penalty assessment (VPA) must be struck from his judgment and sentence. Finally, Salas submitted a supplemental statement of additional grounds (SAG) raising five arguments.

We find no errors and affirm Salas's conviction. We remand with instructions to strike the VPA from his judgment and sentence and otherwise affirm his sentence.

BACKGROUND

On December 23, 2022, while incarcerated and serving a sentence for a prior murder conviction, Salas was charged by information with aggravated first degree murder for killing another inmate. Salas was not arrested on the new charge. Instead, the State issued a summons.

Salas's first appearance occurred on January 23, 2023. The transcript suggests that at the time of this hearing, Salas was in Department of Corrections (DOC) custody and appeared remotely by video. The trial court informed Salas that he was being accused of aggravated first degree murder, a class A felony, which meant the maximum penalty was life in prison. Additionally, he was informed that the life imprisonment was without the possibility of release or parole.

After advising Salas of his constitutional rights, the court inquired whether Salas intended to hire an attorney or wanted counsel appointed. Salas responded by moving to

2

proceed pro se.  After clarifying that Salas wanted to represent himself, the following

colloquy occurred:

> THE COURT: All right.  Well, you want to represent yourself and be your own attorney?  Is that what you were saying?
>
> THE DEFENDANT: That is correct, Your Honor.
>
> THE COURT: Okay.  Let's have a conversation about that.
>
> Have you attended law school?
>
> THE DEFENDANT: I have not.
>
> THE COURT: Do you have a law degree or have you passed the Bar Association—the bar in—anywhere, including Washington?
>
> THE DEFENDANT: Negative.
>
> THE COURT: Are you familiar with the rules of evidence?
>
> THE DEFENDANT: Not too much.
>
> THE COURT: Okay.  So do you recognize if you represent yourself in this matter, you will be held to the same standard of knowledge that a licensed attorney would be held to?
>
> THE DEFENDANT: I understand that.
>
> THE COURT:  And that means that going forward, you would have to comply with all of the evidentiary rules contained in the rules of evidence, all of the court rules of learning how cases proceed, and all of the statutes applicable to your case.
>
> THE DEFENDANT: That is correct.
>
> THE COURT: So whatever day then (indiscernible) for purposes of today, I will grant your motion to represent yourself.
>
> I would encourage you to consider that decision because it puts you at a very serious disadvantage in defending yourself.
>
> THE DEFENDANT: Yes.
>
> THE COURT: You are welcome at any time during these proceedings to notify the Court that you do want to have counsel appointed to represent you.

           THE DEFENDANT: Very well.

           THE COURT: All right.

Rep. of Proc. (RP) at 8-9.

Following this colloquy, the State indicated that Salas was not being held on this matter and the State was not seeking bail since Salas was already in custody serving a prior sentence.

Salas then raised an objection to the timing of his arraignment, citing "criminal law 6.11," and arguing that the rule required that he be arraigned within 14 days of the information being filed. He asserted that dismissal was required because of a due process violation. The court noted Salas's somewhat incoherent objection, renewed its encouragement that Salas have an attorney represent him for his case, and denied the motion to dismiss. Salas declined the offer for counsel, stating that he wanted to stand by his right to proceed pro se.

Though arraignment was originally set at a different time, in light of Salas's choice to represent himself the court offered, and Salas agreed to conduct arraignment at that time. The court then read the information into the record for Salas's benefit. After some discord over the entry of Salas's plea, Salas entered a plea of not guilty.

At a later pretrial hearing, Salas waived his right to a jury trial and requested a bench trial. At this same hearing, the court again expressed its concern with Salas representing himself. In response, Salas renewed his argument that his arraignment was

untimely. The court denied Salas's motion to dismiss his charges, stating that his arraignment was timely because it was done the same day as his first appearance.

In addition to the discussion about CrR 4.1, discovery issues were brought to the court's attention. In particular, the State informed the court that all of the discovery was provided to Salas except for certain medical and mental health records regarding the victim. Salas objected, and the court informed him that it was not going to dismiss his charge based on an alleged discovery violation. The court again advised Salas that it would be in his best interest to have the assistance of an attorney and that he would still be held to the same standard regardless of his lack of familiarity with the rules of criminal evidence. The State then requested that the court appoint standby counsel for trial just in case Salas had a question during the proceedings. The court agreed, and appointed standby counsel, Rachel Cortez, to represent him.

At the beginning of trial, Salas raised objections to discovery and his arraignment, seeking dismissal of his charges. The court attempted to explain to Salas that his arraignment was timely under the criminal rules and that the discovery documents were not relevant or required to be disclosed under CrR 4.7. After Salas continued to bring these issues to the court's attention, standby counsel discussed her concern with Salas's competency:

> MS CORTEZ: And, Your Honor, again, for the record, I know that I do not represent Mr. Salas; that he represents himself.

This has been something that I have gone back and forth with, have asked other stand-by counsel their opinions. I was just appointed to this case—or somewhat appointed to this last Thursday.

I have concerns about Mr. Salas's competency, which is why I've asked to essentially put a stop to this trial, so that potentially that can be reviewed.

My concern here in just watching the trial process as it started is that he keeps bringing up the same court rule and also not indicating his understanding as to why the judge is making the ruling. His inability to let go of that issue leads me to believe that he is not competent to proceed in the trial.

So I do have a competency issue that I wanted to raise. And, again, I was just appointed very shortly. So this wasn't something I could—I don't even know if I could bring that up. I know that the [S]tate and the Court can file competency evaluations.

But I have concerns, Your Honor, and it needs to at least be said. Thank you, Your Honor.

RP at 127-128.

After hearing from standby counsel, the court then asked to hear from Salas who stated, "Your Honor, I seems [sic] to be in accord with Ms. Cortez." RP at 128. The court asked Salas to clarify, to which he responded "I'm in agreement with Ms. Cortez." RP at 129. After hearing from the State, the court made the following determination regarding competency:

THE COURT: Okay. Give me one moment. So there—Mr. Salas has had three appearances in this court. Today is the first time that he has appeared in person. He had his first appearance on January 23 of this year. That was before Commissioner Fulton. That was his first appearance and also arraignment when this trial date was set.

There was a second appearance on March 29th. That was for pretrial. That was before this judicial officer, again, via Webex.

6

And then the third appearance prior to today was on April 13th in the morning when we had our status hearing on this case, as well as a number of others to determine which case was going to go to trial this week.

It was at that point on April 13th that, for lack of a—well, at the Court's strong encouragement, Mr. Salas agreed to stand-by counsel being appointed, but nonetheless was adamant that he wanted to represent himself.

During those hearings, the Court did not note any perceived issues that would give the Court rise to have questions concerning Mr. Salas's competency today.

The Court will agree with Ms. Cortez that Mr. Salas has been adamant on the Rule 4.1 and Rule 4.7 arguments. I do not believe that, by itself, demonstrates a lack of capacity. Frankly, if it did, I would have to have a number of attorneys who appear before me evaluated, because they tend to make the same arguments more than once as well.

Under 10.77.010 "incompetency" means a person lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect.

So, Mr. Salas, you are representing yourself, which adds a twist to this to some extent.

Have you been diagnosed with a mental disease or defect at some point?

THE DEFENDANT: No.

THE COURT: Do you understand the—why we're here today?

THE DEFENDANT: Yes.

THE COURT: And do you understand the charge against you?

THE DEFENDANT: Yes.

THE COURT: Okay. I think the Court is going to find, without further evidence or testimony, that Mr. Salas appears to meet the definition of being competent for purposes of RCW 10.77 and that we can otherwise proceed.

Ms. Cortez, I will say if you observe anything or feel that something has changed, you are welcome to re-raise that issue with the Court.

RP at 131-33.

The case proceeded to a bench trial where Salas represented himself with standby counsel present. The court found that the elements of aggravated first degree murder were established beyond a reasonable doubt and found Salas guilty. Furthermore, at the request of the State, the court made detailed findings of its observations regarding Salas's demeanor, attentiveness, and capacity and his waiver of counsel. Following entry of these findings, Salas moved for a new trial, stating that he would follow up with a written motion for prosecutorial misconduct. The court denied the oral motion, informing Salas he could file a written motion.

At sentencing, standby counsel was appointed as his attorney at Salas's request. Cortez informed the court she was still concerned that Salas was not competent and that she would be filing a ch. 10.77 RCW form with the court. The court stated that the issue was previously raised and that it was already addressed by the court. For this reason, the court informed the parties it was going to proceed with sentencing.

The court imposed a life sentence without the possibility of parole. Additionally, it imposed the $500 VPA.

Salas appeals.

ANALYSIS

1. COMPETENCY EVALUATION

Salas contends the court erred when it failed to order a competency evaluation prior to trial despite the fact standby counsel raised concerns about Salas's competency. The State argues that nothing in the record suggests that Salas was not competent and the trial court thus did not abuse its discretion when it did not order a competency evaluation.

As an initial matter, the parties cite different standards of review. Salas contends a claimed denial of a constitutional right, such as the right to due process, is reviewed de novo. The State contends that the standard of review for ordering a competency evaluation is abuse of discretion.

"Whether a trial court should have . . . ordered a competency evaluation is . . . reviewed for [an] abuse of discretion." *See State v. McCarthy*, 193 Wn.2d 792, 803, 446 P.3d 167 (2019); *State v. Fedoruk*, 5 Wn. App. 2d 317, 335, 426 P.3d 757 (2018). "The trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons." *Fedoruk*, 5 Wn. App. 2d at 335. Thus, this court reviews the trial court's decision not to order a competency evaluation for abuse of discretion.

"An accused person must be legally competent to stand trial." *State v. Dufloth*, 19 Wn. App. 2d 347, 353, 496 P.3d 317 (2021). "The fundamental right not to stand trial unless competent is guaranteed by the due process clause of the Fourteenth Amendment."

*Id.*; *see also* U.S. CONST. amend. XIV. "Failure to observe procedures adequate to protect an accused's right not to be tried while incompetent to stand trial is a denial of due process." *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 863, 16 P.3d 610 (2001).

Under Washington's competency statutory scheme,

> Whenever there is a doubt as to competency, the court on its own motion or on the motion of any party shall first review the allegations of incompetency. The court shall make a determination of whether sufficient facts have been provided to form a genuine doubt as to competency based on information provided by counsel, judicial colloquy, or direct observation of the defendant. If a genuine doubt as to competency exists, the court shall either appoint or request the secretary to designate a qualified expert or professional person, who shall be approved by the prosecuting attorney, to evaluate and report upon the mental condition of the defendant.

RCW 10.77.060(1)(b)(i). Under the statute, "genuine doubt as to competency" means that "there is reasonable cause to believe, based upon actual interactions with or observations of the defendant or information provided by counsel, that a defendant is incompetent to stand trial." RCW 10.77.010(15).

The defense "bears the 'threshold burden' of establishing that there is a reason to doubt the defendant's competency." *Dufloth*, 19 Wn. App. 2d at 354. Although the court gives "considerable weight" to the attorney's opinion regarding competency, "that opinion is not necessarily dispositive." *Id*. Instead, the trial court should focus on whether there is a "'factual basis to doubt the defendant's competence.'" *Id.* (internal quotation marks omitted).

Washington law requires that a trial court order "a competency hearing whenever there is reason to doubt competency." *McCarthy*, 193 Wn.2d at 803. However, once it is determined that a defendant is competent, a trial court is not required to revisit the issue "unless some objective incident or event occurs where the court is provided with new information that indicates a significant change in the defendant's mental condition." *Id*. "Reason to doubt" is "'not definitive, but vests a large measure of discretion in the trial [court].'" *Id*. at 804 (alteration in original). Although there are not any "fixed signs," a court may look to the defendant's "demeanor, conduct, and medical and psychiatric reports." *Dufloth*, 19 Wn. App. 2d at 355.

With these principles in mind, we turn to whether the trial court abused its discretion when it determined there was no reason to doubt Salas's competency. Procedurally, we note that no motion to review Salas's competency was before the court. Neither Salas, nor the State, nor the court alleged incompetence. Instead, Salas's competence was questioned by stand-by counsel who admittedly did not represent Salas. *See State v. Pugh*, 153 Wn. App. 569, 580, 222 P.3d 821 (2009) (standby counsel does not represent the pro se defendant but rather provides the defendant with technical information and is available in case self-representation is terminated). Although Salas agreed he was "in accord" with standby counsel, he then confirmed to the court that he had never been diagnosed with mental disease or defect at any point.

No. 39770-0-III
*State v. Salas*

On appeal, Salas contends that the trial court abused its discretion by failing to give significant weight to standby counsel's concerns about competency. This argument fails because it assumes that concerns voiced by standby counsel should be given the same weight and deference as concerns raised by an attorney of record. The record here does not support this argument. Nothing suggests that standby counsel had close contact with Salas, was privy to any privileged communication, or had unique insight into his thought process or mental health.[1] Instead, it appears that standby counsel's concerns were based entirely on observations made in court; the same observations available to the trial court.

Regardless, merely raising a concern is not sufficient by itself to require the court to order a competency evaluation. Instead, the defense first "bears the 'threshold burden' of establishing that there is a reason to doubt the defendant's competency." *Dufloth*, 19 Wn. App. 2d at 354. Then, the court decides whether "sufficient facts have been provided to form a genuine doubt as to competency based on [the] information provided." RCW 10.77.060(1)(b)(i). While a claim of incompetence can initiate the process, the

---

[1] *See Drope v. Missouri*, 420 U.S. 162, 177 n.13, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975) ("Although we do not, of course, suggest that courts must accept without question a lawyer's representations concerning the competence of his client, an expressed doubt in that regard by one with 'the closest contact with the defendant,' is unquestionably a factor which should be considered.") (internal citations omitted).

court must still independently assess whether there is a genuine doubt about the defendant's competence before ordering an evaluation.

Salas contends that the trial court abused its discretion in finding that there was no reason in the record to doubt Salas's competency. The only fact he points to in support of this argument is his repeated motions to dismiss based on arguments that arraignment was not held in accordance with CrR 4.1. However, as the court noted, this act alone did not call into question his competency when considered in light of all of the circumstances. Incompetency means that a person "lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect." RCW 10.77.010(19). Merely claiming Salas was fixated on certain issues does not demonstrate he lacked the capacity to understand the nature of the proceedings or that he was unable to assist in his defense.

The trial court's determination that there was no evidence of incompetence is supported by the record. Salas did not have a history of mental health diagnosis or treatment. He knew why he was in court, and understood the nature of the charges. Throughout all of the proceedings, the court was able to observe Salas's demeanor, attentiveness, and capacity. The court noted that Salas was articulate in his requests and made reasoned decision after considering his options. He discussed logistics and procedure while raising issues of timing and discovery. During trial, he made objections while writing notes and referring to the rule book.

13

Under these circumstances, the trial court did not abuse its discretion in failing to order a competency evaluation.

2.   SELF-REPRESENTATION

Salas contends his waiver of counsel was not knowing, intelligent, and voluntary because (1) the decision to allow Salas to proceed pro se was unreasonable in light of the considerable doubts about his competency to stand trial, and (2) the court told Salas that a life with parole sentence was possible, not that it was mandatory.  We find no error.

This court reviews "a trial court's decision on whether a defendant's waiver of the right to counsel was voluntary, knowing, and intelligent," for an abuse of discretion. *State v. Howard*, 1 Wn. App. 2d 420, 425, 405 P.3d 1039 (2017).  However, because this right is so fundamental, if the finding is erroneous, this court cannot treat it as harmless error.  *Howard*, 1 Wn. App. 2d at 426; *see also State v. Silva*, 108 Wn. App. 536, 542, 31 P.3d 729 (2001).  The burden of proof rests with the defendant to demonstrate the waiver was not knowing and intelligent.  *Howard*, 1 Wn. App. 2d at 426.  Likewise, "[w]e review a trial court's decision on a defendant's request to proceed pro se for abuse of discretion." *State v. Phan*, 25 Wn. App. 2d 185, 192, 522 P.3d 105 (2022).

Both the Sixth Amendment to the United States Constitution and the Washington State Constitution provide a criminal defendant with "the right to [assistance of] counsel." U.S. CONST. amend. 6; WASH. CONST. art. I, § 22.  These same provisions apply to self-representation.  *Howard*, 1 Wn. App. 2d at 424.  However, there is a conflict

between the right to counsel and self-representation because "self-representation constitutes a waiver of the right to counsel." *Id*. For this reason, "the right to self-representation is not absolute." *Id*. Instead, a court may allow a defendant to represent himself, but only if his waiver "is voluntary, knowing, and intelligent." *Id*. Similarly, a "defendant wishing to invoke his right to self-representation must make an affirmative, unequivocal demand to waive counsel and proceed pro se." *Phan*, 25 Wn. App. at 193.

Salas claims that the court erred when it allowed him to proceed pro se given the considerable doubts about his competency to stand trial, let alone conduct his own defense. Initially, we note that the parties fail to recognize, much less apply the different standards regarding competency to stand trial versus competency for self-representation. *See In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 661-62, 260 P.3d 874 (2011) (noting that "a trial court [can] limit the right to self-representation when there is a question about a defendant's competency to waive counsel . . . even if the defendant has been found competent to stand trial"). Regardless, Salas's argument fails.

As discussed, the trial court engaged in a colloquy on the record to ensure Salas understood the risks of self-representation. This was after Salas made an affirmative, unequivocal demand that he wished to proceed pro se. The court indicated that it did not have concerns about Salas's competency. As such, it was not an abuse of discretion to allow Salas to represent himself even after standby counsel raised concerns about competency.

15

Next, Salas asserts that his waiver of counsel was not knowing, intelligent, and voluntary because the court informed him that a life sentence without parole was possible, not that it was mandatory. Thus, the issue pertains to whether Salas was properly informed of the maximum sentence for his charge.

Our Supreme Court has established that a colloquy between the defendant and the trial court is the "'preferred means of assuring that defendants understand the risks of self-representation.'" *Howard*, 1 Wn. App. 2d at 426 (quoting *City of Bellevue v. Acrey*, 103 Wn.2d 203, 211, 691 P.2d 957 (1984)). The court explained that at a minimum, and relevant to this appeal, that the colloquy "'should consist of informing the defendant of the nature and classification of the charge, *the maximum penalty upon conviction* and that technical rules exist which will bind [the] defendant in the presentation of his case.'" *Id.* (alteration in original) (quoting *Acrey*, 103 Wn.2d at 211). In the absence of a colloquy, the record should demonstrate "that the defendant understood the seriousness of the charges and knew the possible maximum penalty." *Acrey*, 103 Wn.2d at 211.

Here, the court informed Salas that he was being accused of aggravated first degree murder. Additionally, the court stated it was a Class A felony, which meant the maximum penalty was life in prison, a $50,000 fine, or both. Further, that the life imprisonment was without the possibility of release or parole. Salas was also informed of his constitutional rights, including the right to be represented by an attorney at no expense if he could not afford one. After Salas moved to proceed pro se, the court

16

conducted a colloquy that apprised Salas of the obstacles he would face representing himself. Even after this colloquy, the court told Salas that if he changed his mind and wished to proceed with counsel, he could advise the court at any point. And on several subsequent occasions, the court urged Salas to reconsider his choice to represent himself. Despite this, Salas still requested to proceed pro se.

In addition to the colloquy, the record demonstrates that Salas understood the seriousness of the charges and knew the possible maximum penalty for aggravated first degree murder. For example, at trial, text messages were introduced where Salas stated he was looking at "yet again Murder in the First Degree" and that with "two murders different case numbers, or cases, you do life." RP at 339. Furthermore, in another exchange of text messages where Salas was discussing the incident, he said "bless the prison system LOL. Hashtag kill someone free tablets. It only cost your life." RP at 335. Finally, another exchange of texts reveal Salas telling his aunt that they received tablets for free "or the cost of our life." RP at 336. Because the court conducted a colloquy with Salas regarding the risks of self-representation, informed him of the maximum penalty for first degree murder, and the record demonstrates Salas understood the nature of his charges and the maximum penalty, his waiver was thus voluntary, knowing, and intelligent.

Finally, Salas relies on *United States v. Erskine*, 355 F.3d 1161 (9th Cir. 2004), which is factually distinguishable. There, the defendant expressly misunderstood the maximum penalty that he faced and the district court failed to correct the misunderstanding. *Id*. The defendant believed that he was facing a maximum term of one year but instead was facing five years. *Id*. at 1165. Here, there was no expression on the record that Salas believed his maximum sentence was anything other than life in prison. For this reason, *Erskine* is unhelpful to Salas's argument.

The trial court did not abuse its discretion when it let Salas proceed pro se and accepted his waiver of representation.

3.   VICTIM PENALTY ASSESSMENT (VPA)

Salas contends this court should strike the provision of his judgment and sentence requiring him to pay the $500 VPA because he is indigent and the State concedes.

Under former RCW 7.68.035(1)(a) (2018), a judge was required to impose the $500 victim penalty assessment for one or more felony or gross misdemeanor convictions. However, in 2023, legislation amended this statute. *See* LAWS OF 2023, ch. 449, § 1. This amendment had an effective date of July 1, 2023, and included a provision instructing a court to not impose the penalty assessment if the court found the defendant indigent at the time of sentencing. *See* RCW 10.01.160(3). Defendants are entitled to the benefit of these amendments if their case is pending on direct appeal. *See State v. Ramirez*, 191 Wn.2d 732, 735, 426 P.3d 714 (2018).

We accept the State's concession and remand with instructions to strike the $500 VPA from Salas's judgment and sentence because the court found him indigent at sentencing.

4.  SAG

Salas articulates two additional issues in his supplemental SAG. Each will be addressed, in turn.

*1.  Prosecutorial Misconduct*

Salas alleges prosecutorial misconduct in two separate instances. First, Salas contends the prosecutor violated discovery rules. In particular, he argues the prosecutor was not in compliance with CrR 4.7(a)(1) because the prosecutor failed to disclose documents by the omnibus hearing.

"In order to prevail on a claim of prosecutorial misconduct, a defendant is required to show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). To show prejudice, the defendant must "show a substantial likelihood that the misconduct affected the jury verdict." *Id*.

We do not need to determine if the prosecutor's conduct was improper because Salas cannot show prejudice. On the record, the court addressed this issue and made a finding and/or conclusion that it did not "believe that [Salas was] prejudiced by the fact that the discovery may have been delivered a few hours later." RP at 385. Furthermore,

19

the court explained that it did not believe prosecutors were responsible for what happens internally and instead can only do what they can in terms of turning over material. Salas has failed to demonstrate or argue how this alleged error prejudiced him at trial. Consequently, the argument fails.

Second, Salas alleges the prosecutor failed to comply with the rules of professional conduct, 3.8 special responsibilities, that a prosecutor must timely disclose to the defendant all evidence or information known that tends to negate guilt.

Salas has failed to argue what evidence or information was withheld, provide any analysis, or inform this court of the nature or occurrence of any alleged error. As such, this court should decline to review this issue. *See State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). Alternatively, he fails to demonstrate any prejudice, which defeats his prosecutorial misconduct claim.

### 2. Timeliness of Arraignment

Salas contends that his due process rights were violated when he was arraigned in violation of CrR 4.1(a)(2). This rule provides that a defendant not detained in jail shall be arraigned no later than 14 days after that appearance which next follows the filing of the information or indictment. That if the defendant is not detained in jail or subject to such conditions of release, any delay in bringing the defendant before the court shall not

affect the allowance time for arraignment regardless of the reason for that delay. Salas goes on to list as a supporting fact that a "defendant must plea in arraignment before information or indictment is had" and that "he or she must plea to information or indictment, charges before due process." Supp. SAG at 8.

Although it is difficult to ascertain Salas's argument from his SAG, he has raised this issue several times throughout his proceedings and a similar motion was already addressed by the trial court. The 14-day rule from CrR 4.1(a)(2) requires arraignment to be held within 14 days of a defendant's first court hearing following the filing of the information. Here, a summons was filed on December 23 requiring Salas to appear one month later on January 23. At this first hearing, Salas appeared via Webex from prison. He was not in jail, was not being held on this matter, and the State did not seek bail. Salas was arraigned at this first hearing and entered a plea of not guilty. As such, he was arraigned within 14 days of his first appearance in accordance with CrR 4.1(a)(2).

*3. Miscellaneous Comments*

Salas's argument on competency is addressed above. Otherwise, he provides a paragraph with "core terms," that is indecipherable and we decline to address. *See Alvarado*, 164 Wn.2d at 569.

We affirm Salas's conviction and sentence, but remand for the limited purpose of striking the VPA from the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Cooney, J.